FILED

DEC 18 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

-----------------------------------------------------------------X

Student A, a Minor, by her Mother and
Guardian, SUSAN KUTTNER,
Plaintiff(s),

v.

VALLEY VIEW SCHOOL DISTRICT 365U,
SUPERINTENDENT DR. JAMES MITCHEM (Jr.)
(in his individual and official capacity),
Executive Director of Student Services/Administrator
ERICA EKSTROM (in her individual and official capacity),
Defendant(s).

-----------------------------------------------------------------X

**1:17-cv-09071
Judge Andrea R. Wood
MagistrateJudge M. David Weisman**

# **COMPLAINT**

NOW COMES the Plaintiff, SUSAN KUTTNER, Pro-Se, filing this complaint on behalf

of her daughter Student A (as an appeal of the ISBE School Administrative Due Process Hearing

Decision) against the above named Defendants states as follows:

## **NATURE OF THE ACTION**

1. This action is brought pursuant to and arises under Individuals with Disabilities Education Act

   (IDEA), Title 20 U.S.C. § 1400 *et seq.* (§ 1400-1415 *et seq.*) and also under Americans with

   Disabilities Act (ADA). Plaintiff seeks an injunction in Student A's favor against Defendant

   Valley View School District 365U in Will County, IL regarding Student A's educational

   placement under FAPE, Free and Appropriate Education (LRE) to be assigned to her home

   school in her Least Restrictive Environment, LRE. Plaintiff also seeks damages to redress

   Defendants' actions related to Plaintiff Student A against 2 Defendants on an individual basis.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under Individuals with Disabilities Education Act ("IDEA"), Title 20 U.S.C. § 1400 *et seq.* (§ 1400-1415 *et seq.*) and also under Americans with Disabilities Act ("ADA") & under Title 42 U.S.C., Section 1983 and the Illinois School Code, 105 ILCS 5/14-8.02a *et seq.* Venue is based on Defendants located in Will County, IL.

3. Plaintiff Kuttner fulfilled all conditions precedent to the institution of this action under IDEA Title 20 U.S.C. & Title 42 U.S.C., Section 1983 & Americans with Disabilities Act (ADA) & 105 ILCS 5/14-8.02a(i)

4. Pursuant to 105 ILCS 5/14-8.02a(i), this APPEAL (civil action) is brought in Federal court, competent jurisdiction, within 120 days after a copy of the decision was mailed to the parties. Plaintiff timely filed this Complaint and commenced this lawsuit within 120 days after the IHO issued her ISBE Due Process Hearing Decision/Right to Sue Letter (Exhibit A)

5. The IHO issued a ISBE Due Process Hearing Decision letter dated August 21, 2017, a copy of which is attached hereto as Exhibit A.

6. Plaintiffs attempted to resolve issues with the Defendants to no avail, and Plaintiffs have exhausted their administrative remedies in the IL State Board of Education Due Process Hearing August 2017.

## THE PARTIES

7. Plaintiff Student A is a MINOR and a Valley View School District 365U Student with multiple disabilities, including ADHD. She resides with her Mother, Susan Kuttner, in Will County, IL.

8. Plaintiff SUSAN KUTTNER (hereinafter "Kuttner"), is a female who resides in Will County, Illinois, and who is the Parent/Mother and Guardian of Plaintiff Student A.

9. Defendant, Valley View School District 365U (hereinafter "District") is a public entity recognized and sanctioned by the laws of the State of Illinois. Further, Valley View School District 365U is an indispensable party, in that, it funds District Schools; thus, it is required to pay a judgment entered against the Defendants.

10. Defendant, Superintendent Dr. James Mitchem (Jr.) (hereinafter "Superintendent") is and has been the Valley View School District 365U Superintendent since 2011.

11. Defendant, Executive Director of Student Services Erica Ekstrom (hereinafter "Ekstrom") is the Valley View School District 365U Administrator and District's representative at the August 2017 ISBE Due Process Hearing. Ekstrom is and has been in this position from prior to 2015 to present as Executive Director of Student Services.

## **PROCEDURAL REQUIREMENTS**

12. Plaintiff Kuttner fulfilled all conditions precedent to the institution of this action under Individuals with Disabilities Education Act (IDEA), Title 20 U.S.C. § 1400 *et Seq.* (§ 1400-1415 *et seq.*) and also under Americans with Disabilities Act (ADA), and Title 42 U.S.C., Section 1983-1988.

13. Pursuant to 105 ILCS 5/14-8.02a(i), this APPEAL (civil action) is brought in Federal court, competent jurisdiction, within 120 days after a copy of the decision was mailed to the parties. Plaintiff timely filed this Complaint and commenced this lawsuit within 120 days after the IHO issued her ISBE Due Process Hearing Decision/Right to Sue Letter (Exhibit A)

3

14. The IHO issued a ISBE Due Process Hearing Decision letter dated August 21, 2017, a copy of which is attached hereto as Exhibit A.

15. Plaintiffs attempted to resolve issues with the Defendants to no avail, and Plaintiffs have exhausted their administrative remedies in the IL State Board of Education Due Process Hearing August 2017 as required by 20 U.S.C. § 1415(f). Therefore, Plaintiff hereby invokes said laws as basis of claim(s).

16. Parties also participated in multiple unsuccessful ISBE Mediations prior to the August 2017 ISBE Due Process Hearing.

## **BACKGROUND**

17. At all times relevant, Plaintiffs have resided in Will County and the Valley View School District 365U boundaries

18. Plaintiff Student A was diagnosed ADHD in the Fall of 2015, immediately after the Valley View School District 365U Violations began in August 2015. See Plaintiff's ISBE FOUNDED Complaint dated 7-31-17 for Substantiated violations during Plaintiff's Kindergarten year: August 2015-January 2016 with roughly 7-10 FOUNDED violations by Valley View School District 365U which caused Student A's (ongoing) environment.

19. At all times relevant, Plaintiff Student A had additional diagnosed disabilities.

20. Plaintiff has been following in good faith all the rules and regulations and procedures (admin) of ISBE and the District (and the school Board)

21. An administrative Hearing was held over 4 days on August 7, 8, 9, & 11, 2017. IHO (Hearing Officer) issued the Decision (on which this Appeal and Filing is based) on August 21, 2017.

22. At all times relevant, Valley View School District 365U Superintendent Dr. James Mitchem (Jr.) and Administrator Executive Director of Student Services Erica Ekstrom have been employed by the Defendant District in their said positions.

23. Ekstrom was the District representative or "Administrator" attending and involved with the August 2017 ISBE Due Process Hearing where Plaintiff alleged witness tampering. (Exhibit D)

24. Throughout Plaintiff Student A's attending her home school with the Defendant(s)' School District, Defendants have discriminated against her based on Plaintiffs' Disabilities and Race and Asserting Plaintiffs' rights.

25. Despite Plaintiff's repeated complaints, orally and in writing for Two (2) years, little had been done to resolve the problem(s). For several years, Defendants have violated laws and regulations.

26. Plaintiffs were injured by the Defendants as stated below.

## CAUSE OF ACTION

## INDIVIDUALS WITH DISABILITIES ACT (IDEA)

## TITLE 20 U.S.C. § 1400 *et Seq.* (§ 1400-1415 *et seq.*, & § 4400 *et seq)*

## & AMERICANS WITH DISABILITIES ACT (ADA)

27. Plaintiffs repeat paragraphs 1 through 26, as though stated herein.

28. The school district breached duties created under the Individuals with Disabilities Education Act (IDEA) and the Americans with Disabilities Act (ADA) which directly and proximately resulted in Plaintiff Student A's Due Process Hearing & Hearing Decision & Placement change, injuries, etc.

5

29. IDEA covers "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E)

30. IDEA requires children with disabilities are provided "a free and appropriate education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 4400(c)

31. Plaintiffs have exhausted their administrative remedies in the IL State Board of Education Due Process Hearing August 2017 prior to bringing this suit, as required by 20 U.S.C. § 1415(f). Therefore, Plaintiff hereby invokes said laws as basis of claim(s).

32. Plaintiff filed a Due Process Complaint in January 2017 which was amended twice with 2nd Amended Complaint on 3-28-17. (Exhibit B)

33. On August 21, 2017, IHO issued her Decision in Favor of the District. The Placement change for Plaintiff Student A violated FAPE in LRE under IDEA Title 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(V) where "(Student will not participate with Non-Disabled peers in a regular class.)"

34. The six (6) Issues raised by the Plaintiff raised in the Due Process Hearing were:

   1. **FAPE** – Free and Appropriate Education, January 2017 primary Due Process filing (& April 2017 – See #5 below) & **LRE** – Least Restrictive Environment

   2. Social Work Minutes Increase

   3. Isolated Timeout

   4. Co-Taught Classroom and 1:1 Full-time Aide

   5. District failed to provide a Proper Plan in Place in the Fall 2016, beginning September 2016

6. Homebound Denial April 2017 (**FAPE** 2nd Count Placement Issue)

35. The August 2017 Due Process Hearing Issues primarily dealt with ONE Main issue, which is Plaintiff Student A's Placement.

36. The six (6) Issues were sent to an administrative Hearing. **IHO (Hearing Officer) erred in 3 ways as follows:**

1. Denial of evidence repeatedly submitted and requested by Plaintiff in the August Hearing by IHO not considering the FOUNDED ISBE Complaint dated 7-31-17 which proved Defendants' violations, against Student A, creating the (continued) environment which negatively affected Student A.

2. Witness Tampering by Defendants with Witness Cipriano (Exhibit D) Plaintiff's motion was denied by IHO

3. Subpoenas (See Exhibit F):

   i. Subpoenas were not issued in a timely manner by IHO over several weeks and several witnesses did not appear or were not produced by Defendants, as categorized in B & C below

   ii. Several Former Employees of the Defendants who were called via Subpoena as Witnesses did not appear under subpoenas

   iii. Two (2) Witnesses still employed by the District were not produced

37. Failure to produce witnesses denied Plaintiff's right to examine the witness, causing further grounds for appeal. Defendants denied Plaintiff Due Process.

38. Prehearing Conferences were held on July 6th & 19th. Plaintiff repeatedly asked IHO for timely subpoenas, but Subpoenas took roughly another 10 days or more after Plaintiffs requests. Almost all the Subpoenas were issued ~August 3, 2017 for appearances August 7-11, 2017. Plaintiff was denied Due Process.

39. Ultimately, 2 current (August 2017) District employees and more than 5 former employees did not appear under Subpoena or under guaranteed production by District for the August 7-11, 2017 Due Process Hearing.

40. Exhibit E Cites the **IL Compilation of School Discipline Laws and Regulations** which includes the regulation that District Trainers (for Isolated Timeout and Restraint) be trained within the preceding 1 year. Violations in the 7-31-17 ISBE Founded Complaint (Exhibit C) that should have been considered by the Hearing Officer in her decision as it addressed violations by the Defendant District of not properly identifying the trained (trainers) staff regarding certifications to perform restraint or isolated timeout on the Plaintiff Student A. Violations were found, but not considered by Hearing Officer/IHO. Training issues see Exhibits E, regarding testimony and at least 3 staff members' admissions that they were either not aware of the Regulation for training within 1 year to be a trainer or admissions that they as trainers have not been trained in about 2 years and "2-3 years."

41. See Exhibit C (3 page 11-21-17 letter) where ISBE may withhold District's Part B funding and school recognition due to non-compliance with ISBE orders for corrective action related to training in Restraint, etc.

42. Further violations of Isolated Timeout and Restraint by District can be found under Requirements for the Use of Isolated Time Out and Physical Restraint {23 IAC 1.285}

43. IHO did not allow the 7-31-17 evidence of Defendants' violations to be entered into evidence, to be considered, or to exam witnesses regarding the violations in the August 2017 Hearing.

44. Similarly, Violations in the 7-31-17 ISBE Founded Complaint (Exhibit C) that should have been considered by the Hearing Officer in her decision as it addressed violations by the Defendant District of **34 Code of Federal Regulations, §300.116(a-e), which states in part** In determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency must ensure that-

> a) The placement decision—
>
> > 1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options;
>
> b) The child's placement-
>
> > 1) Is determined at least annually;
> >
> > 2) Is based on the child's IEP; and
> >
> > 3) Is as close as possible to the child's home;
>
> c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled;
>
> d) In selecting the LRE, consideration is given to any potential harmful effect on the child or on the quality of services that he or she needs; and
>
> e) A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum.

45. Similarly, Violations in the 7-31-17 ISBE Founded Complaint (Exhibit C) that should have been considered by the Hearing Officer in her decision as it addressed violations by the Defendant District of **34 Code of Federal Regulations, §300.324(a)(1)(ii), which states:**

    a) Development of IEP-

        *1)* General. In developing each child's IEP, the IEP Team must consider-

        ii) The concerns of the parents for enhancing the education of their child;

46. In addition to the 7-31-17 violations, IHO did not grant Plaintiff's Motion to Strike due to Defendants' witness tampering (Exhibit D)

47. Plaintiffs contend that the Defendants influenced the testimony of Miss Cipriano following witness M.W.'s testimony which was favorable to Plaintiffs' case.

48. Cipriano's testimony was not credible and mischaracterized and contradicted other testimony/evidence in District's favor.

49. After M.W. testified with evidence (recordings supplied by District) favorable to the Plaintiff regarding isolated timeout and admissions by Cipriano, Cipriano testified correcting or covering up testimony regarding her admissions of isolated timeout performed on Student A. Cipriano's testimony was not credible and led to Cipriano arguably admitting incompetence in her position.

50. Plaintiff also testified about witness tampering. Plaintiff argued motion to Strike (Exhibit D) to no avail.

51. Cipriano also testified in contradiction of student A's Doctor's (MD) statements, letters, and testimony. The Doctor's consistent letters before and after his testimony (August 2017) & before and after a phone conversation with Cipriano contradicted Cipriano's testimony significantly. Given the witness tampering and Cipriano's testimony being not credible the

IHO should have stricken Cipriano's entire testimony and any and all transcripts of testimony by Cipriano.

52. Despite Plaintiff's complaints in writing and orally, the Defendants failed to respond in any corrective or preventative manner. Defendants continued to violate laws and regulations. In fact, District continues to not comply with the 7-31-17 Corrective action ordered by ISBE as Evident in the 11-21-17 ISBE letter where training is still an issue and ISBE (after multiple deadlines which District has not complied with) states the District's School recognition and Part B funds (in part or in full) may be withheld. (Exhibit C – 3 page letter)

53. Despite Plaintiff's written and many verbal requests to keep Plaintiff Student A in her home school, LRE, Defendants repeatedly failed to support Student A and changed Student A's placement repeatedly.

54. Throughout Plaintiff Student A's attending her home school with the Defendant(s)' School District, Defendants have discriminated against her based on Plaintiffs' Disabilities and Race and Asserting Plaintiffs' rights.

55. Defendants acted knowingly, intentionally, willfully, and maliciously.

## DAMAGES

56. Plaintiff Susan Kuttner had to Withdrawal Plaintiff Student A from special education due to substantiated violations, continued environment, and continued violations by Defendants and due to Plaintiff Student A's resulting medical state and Medical Providers' recommendations and ongoing injury.

57. As a direct and proximate cause of Defendants' actions and practice, Plaintiffs have sustained and continue to sustain severe financial damages, including but not limited to loss of income,

Loss of Enjoyment of Life, attorney's fees, costs, and other damages allowed under Individuals with Disabilities Education Act (IDEA), Title 20 U.S.C. and also under Title 42 U.S.C. Section 1983-1988.

58. As a direct and proximate cause of Defendants' Actions and practice, Plaintiffs have sustained and continue to sustain severe emotional distress, anxiety, humiliation, defamation of character, damage to reputation, pain and suffering, financial stress, bodily harm, physical injury, embarrassment and depression caused by Defendants and other damages allowed under Individuals with Disabilities Education Act (IDEA), Title 20 U.S.C. and also under Title 42 U.S.C. Section 1983-1988.

59. Plaintiffs were seen by Doctors, therapists, and urgent care for the physical injuries. Additional physical, emotional, mental or psychological injury, distress, etc. were witnessed by Plaintiff(s) and medical professionals.

60. Plaintiff continues to suffer emotionally and psychologically.

61. Defendants' (intentional) conduct has damaged Plaintiffs. Defendants should be ordered to compensate Plaintiff and provide Compensatory and Punitive Damages.

**WHEREFORE,** Plaintiffs respectfully request This Court Issue Orders declaring and granting the following Relief:

1. Injunctive Relief - Court order issuing an injunction to return Student A's placement to her home school under special Education;

2. Vacate Student A's Placement outside of her home school, returning her placement to her home school;

3. Vacate IHO Due Process Hearing Decision;

4. Any future placement changes / Significant IEP/504 changes that Plaintiffs/Parent disputes must be recommended by an outside psychologist or specialist who is approved by Student A's Parent and who is permitted by Defendants to observe Student A routinely at the school setting. Defendant District will pay for the outside provider;

5. That this Court Issues an order declaring that Defendants: Valley View School District 365U to cease segregation of Plaintiff/disabled Students (Placement changes) and the District follow the law in changing placement (Placement Violations) of individual Students according to law **34 CFR § 300.116**;

6. That this Court orders Defendants to cease harassment and retaliation against Plaintiffs and similarly situated Students/Parents or of Plaintiffs' associates by Defendants;

7. That this Court awards Plaintiffs compensatory damages against the Defendants;

8. Defendants, jointly and severally, in such amount as may be found to be sufficient to compensate Plaintiffs for the Damages described above and below. District is liable for damages while Damages against Individual Superintendent and Ekstrom are also appropriate;

9. That this Court awards Plaintiffs in an amount found to be sufficient for Defendants' intentional violation of **IDEA 20 U.S.C. (§ 1400 *et Seq.*) or ADA**;

10. That this Court awards Plaintiffs in an amount found to be sufficient for Defendants' intentional violation of **IDEA 20 U.S.C. (§ 1400 *et Seq.*) or ADA**;

11. That this Court awards attorney's fee pursuant to **IDEA 20 U.S.C. (§ 1400 *et Seq.*) or ADA** and any further applicable law;

12. That This Court awards Plaintiff for Punitive Damages against the Defendants;

13. A judgment in Plaintiffs' favor and against the Defendants in the amount of $3 Million ($3,000,000) for Lifetime Compensation;

14. A judgment in Plaintiffs' favor awarding Plaintiff the costs of this action;

15. A judgment in Plaintiffs' favor awarding such other and further relief that This Court deems just and proper.

**JURY TRIAL IS REQUESTED**

Dated: December 18, 2017

Respectfully submitted,

Susan Kuttner, Parent, Pro-Se

P.O. Box 5162

Wheaton, IL 60189

866-751-6233

Royalrealestate10@yahoo.com

# Exhibit List

| | |
|---|---|
| EXHIBIT A | IHO (Hearing Officer) Decision August 21, 2017 (23 Pages) |
| EXHIBIT B | Original Due Process Filing  (January 2017) – Not attached |
| | 2nd Amended Complaint Attached (March 28, 2017) (4 Pages) |
| EXHIBIT C | ISBE FOUNDED Complaint 7-31-17 (27 pages) |
| | (Not considered by IHO)  & 11-21-17 (3 pages) |
| | 1 Page IEP note also included (7-31-17 evidence) |
| EXHIBIT D | Motion to Strike Testimony of Cipriano  (3 Pages) |
| | RE: Witness Tampering |
| EXHIBIT E | Compiled Statutes Regulations (Trainers trained within 1 year) |
| | Excerpts (8 Pages) |
| EXHIBIT F | Subpoenas (Documents, List, & emails regarding Subpoenas) |

# **Exhibit List**

| | |
|---|---|
| EXHIBIT A | IHO (Hearing Officer) Decision August 21, 2017 (23 Pages) |
| EXHIBIT B | Original Due Process Filing   (January 2017) – Not attached |
| | 2nd Amended Complaint Attached (March 28, 2017) (4 Pages) |
| EXHIBIT C | ISBE FOUNDED Complaint 7-31-17 (27 pages) |
| | (Not considered by IHO)  & 11-21-17 (3 pages) |
| | 1 Page IEP note also included (7-31-17 evidence) |
| EXHIBIT D | Motion to Strike Testimony of Cipriano  (3 Pages) |
| | RE: Witness Tampering |
| EXHIBIT E | Compiled Statutes Regulations (Trainers trained within 1 year) |
| | Excerpts (8 Pages) |
| EXHIBIT F | Subpoenas (Documents, List, & emails regarding Subpoenas) |

# ILLINOIS STATE BOARD OF EDUCATION
# IMPARTIAL DUE PROCESS HEARING

Student,

Case No: 2016-0213

v.

Impartial Hearing Officer

Valley View CUSD 365U,

School District.

## FINAL DECISION AND ORDER

### JURISDICTION

The undersigned hearing officer has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, the Illinois School Code, 105 ILCS 5/14-8.02a *et seq.*, and her appointment as hearing officer by the Illinois State Board of Education (ISBE) on January 25, 2017.

### PROCEDURAL BACKGROUND

The parent filed an initial complaint in this matter on January 19, 2017 and amended complaints on January 23th and March 28th.[1] On May 8th, the parent filed a new complaint, which raises an issue of denial of homebound placement, and that complaint was consolidated with Case 2016-0213. The parent, who is representing herself and the student, is also working with an advocate,

The district is represented by

---

[1] The district filed an expedited due process request

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES



A

The parties participated in mediation



Prehearing conferences for this matter were held on July 6th and July 19th by telephone conference call. Several lengthy status conferences were held after July 19th to address questions about hearing-related matters, including several of the parent's proposed witnesses and requests for subpoenas. The hearing was closed, pursuant to the parent's request.

The parties entered the following joint stipulations at the start of the hearing: 1

5) The parties are also in agreement with respect to the individual's representations regarding Witness Qualifications including: Staff Name, Educational Background and Licenses, Work Experiences and Role/Responsibilities, attached hereto as Exhibit D.

In rendering this decision, the undersigned has considered all documents and expedited transcripts entered into evidence, testimony by parties' witnesses, the parties' closing arguments and their suggested case law, as well as the hearing officer's independent research. There was no transcript of this hearing issued at the time this decision was rendered, so this decision is based on the hearing officer's notes, the documents entered into evidence, and the law applicable to the issues raised in this matter. This decision is issued within ten days after the hearing's conclusion, as required by Illinois law. 105 ILCS 5/148.02a(h).

## ISSUES AND REQUESTED REMEDIES

The parent's complaint, as amended and consolidated, raises the following issues for hearing:

1. Whether the district's proposed change of placement ▮▮▮▮
   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ School provides the
   student with a free appropriate public education (FAPE) in the least
   restrictive environment (LRE).

2. Whether the student's behavioral needs require increased social work
   minutes, from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as stated in the
   January 10, 2017 IEP.

3. Whether the student requires isolated time-out as part of her Behavior
   Intervention Plan (BIP).

4. Whether the student requires placement in a co-taught classroom (i.e.,
   both regular education and special education teachers) and a 1:1
   fulltime aide to meet her educational needs.

5. Whether the district failed to provide a proper place for the student
   when she became escalated or needed time/space to cool down during
   the school day, from September 2016 through November 9, 2016;

6. Whether the student required homebound services as of April 2017
   and if so, whether the district's denial of homebound services denied
   the student a FAPE.

As remedies for the above-alleged denials of the student's right to receive a FAPE, the parent requests an Order directing the district to:

1. Provide a stay-put placement at ▮▮▮▮▮▮▮▮▮▮;

2. Implement the acceptable portions the student's IEP/BIP;

3. Remove isolated time-out from the student's IEP/BIP;

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES

██Revise the student's IEP to reflect placement in a co-taught general education classroom at the student's home school, ███████████████

███████

5. Include the following accommodations, supports, services, equipment and assistance necessary to meet the student's educational needs - including her ████████████████████████████ ██████ and OHI:

   a. 1:1 full-time aide[2];

   b. Accommodations, including: preferred seating, extra time, extra warnings, extra help, extra bathroom breaks and classroom breaks, repeating instructions, allowing the student time/space to respond or perform, allow student to be extra "teacher's helper" or periodically assign her preferred tasks to do, provide staff nearby when the student is in line and during times of heightened activity/conflict;

   c. Fewer modifications and more accommodations, or alternatively for the district to pay for outside OT, social work therapies the student is receiving;

   d. Equipment (██████████████████████████████ ██████████████████████████████████ ██████████████████

   e. Room to be available for student to use in extreme behavioral circumstances, as needed for her to calm down;

   f. Staff changes;

   g. Flexible social work minutes, ██████████████████████ depending on the student's needs;

---

[2] To ensure clarity in the record, the parents' complaint asks that the aide be someone other than ██████ ████████ Because of the hearing officer's ruling that she has no authority over the district's personnel decisions, that specific portion of the request is not included in the remedy.

h. Push-in services for related services (███████████ rather than pull-out services;

i. Removal of smiley-chart from student's BIP and less student involvement in data collection/documentation;

j. Weekly notes, summaries sent to parent of behavioral information, including records for antecedents, events before/during/after CPI, escalated states, use of cool down space;

k. Immediate notification to parent by email and telephone when student is escalated;

███████████████████████████████████████

m. Allow the student extra time for snacks, lunch, etc.; and,

n. Ensure all staff are properly trained and qualified, all substitutes and non-teaching staff who have extensive contact with student are trained, qualified, informed of the student's BIP and how to handle the student.

### FINDINGS OF FACT

After considering all the testimonial and documentary evidence entered at hearing, as well as both parties' arguments, the undersigned makes the following factual determinations:

1.  When ██ began first grade in Fall 2016, she was eligible for special education and related services under the categories of ███████████ and other health impairment. SD 28. She was placed in a regular education classroom full-time and received related services: ███████████████

    ███████████████████ SD 54. The IEP also required a classroom aide. *Id*. Although there was a co-teacher in the classroom at that time, that person was assigned to provide academic instruction to a specific student and thus did not work with ██. Tr. 308-312.

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES

2. The IEP team met on September 20, 2016 to review ▉'s IEP. SD 28. The parent, student's grandmother and parent's advocate attended the meeting, the latter by telephone. SD 29. ▉. met both her hearing and social work goals and was making academic progress in reading, math, and writing. SD 31. A crisis plan was developed to address unsafe behaviors, and it includes removing the student from her group in certain situations through the use of CPI transport to a quiet space until she is calm. SD 53. It also includes a provision that if the student is a danger to herself or others, physical restraint may be used, and the mother must be notified per district policies. *Id.* It also includes a provision that if the student shows significant aggression and unsafe behaviors for more than 30 consecutive minutes or if there is a high risk of harm assessment, the team may call SASS to evaluate the student and notify the parent. *Id.*

3. Ms. L., the classroom teacher, was concerned about ▉ peer relationships based on her perception that other students ▉▉▉▉ Tr. 323. She was also concerned that ▉. did not look like she had a good day even when external signs - e.g., her behavior chart - showed that she had. Tr. 324. ▉ demonstrated several concerning behaviors in class, including ▉▉▉▉

▉▉▉▉ Tr. 326.

4. Although ▉ was intellectually capable of working at grade level, she did not always complete all her work and also had trouble producing independent work. Testimony, Ms. L. Ms. L. made accommodations for her, such as writing her work for her and allowing her time to do preferred activities. *Id.* Ms. L. worried that ▉ might not be able to keep up with the school work in light of her behavioral struggles. Testimony, Ms. L

5. Ms. F. was assigned as a classroom aide to the student's first grade classroom and thus was "a resource to all the students" not just ▉ Tr. 312. ▉'s behaviors became more defiant and aggressive over the school year. Tr. 340, 346. She had problems with her peers ▉▉▉▉

▉▉▉▉ - and also with Ms. F. Tr. 340-342. Other concerning behaviors include ▉▉▉▉

▉▉▉▉ Tr. 341-345

6. ▉ also began to demonstrate problematic behaviors in regard to her related services. When her related service providers arrived for push-in or pull-out services, ▉▉▉▉ *Id.* If she did leave the

classroom for a related service, she ███████████████████████████
████████████ *Id.* This emotional dysregulation was "a huge struggle since October." SD 98.

7. ███ reported to both her outside ████████████████████████████
████████ that "████████████████████████████████████████
████████████████████████████████████████████
███████ *Id.* The IEP team agreed that she needed ████████████
████████████████████. *Id.* The emotional dysregulation impacts
███'s ability to participate in her related services. *Id.*

8. The student's outside social worker reported that ██████████████
████████████████████████████████████████████
███████████████████████████████████████ has
difficulty verbalizing her feelings. *Id.* ████████████████████
████████████████████

9. In October and November 2016, ███ began to refuse to go to her sessions
with Ms. R, █████████████████ *Id.*; Tr. 264, 265, 318, 341. Ms. R. has worked
with ███ since she was in the early childhood program. Testimony, Ms. R.
The student was ██████████████████████████████████████
████████████████████████████████████████████
████████████████████ to help her be successful. *Id.* That
need for continual revision continues through the present as ███ needs and
behavior have "peaks and valleys." *Id.*

10. Following the flexible model she had developed with ███. over time, Ms. R.,
began offering sessions within the classroom. Testimony, Ms. R███████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████ to provide "push-services" to the student within the
classroom. SD 318, 372, 378, 386, 397.

11. ███ had refused to go ████████████████████████████████████
November 9, 2016 and January 10, 2017. SD 103.

12. Ms. M. has provided social work services to the student for two years. Tr. 272.
In the fall of 2016, she worked with ████████████████████████
████████████████████ Tr. 273. Ms. M. noted a change in ███

beginning in October 2016, when the student refused to go to her social work sessions. Tr. 276. Ms. M. also reported a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and an increase in her aggression. Tr. 277. Because of the student's refusal to participate in pullout sessions, Ms. M. added push-in services within the classroom for ▇▇▇▇▇▇▇▇▇▇▇▇. Tr. 278.

13. Ms. M. was involved in the crisis interventions for ▇▇▇ which began in Fall 2016. SD 278. Her involvement "varied by day" and significantly increased over the months to about ▇▇▇▇▇▇▇▇▇▇▇, as memorialized in ▇▇'s January 2017 IEP and Ms. M.'s service logs. SD 101, 283; SD 137-143. In October, she ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SD 139▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SD 140. In December, her time spent ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. SD 141.

14. The student received consult ▇▇▇▇▇▇▇▇▇▇▇▇▇ in school from Ms. B. Tr. 83 (1655). A number of ▇▇▇▇▇▇▇▇▇▇▇ were provided in the classroom for ▇▇▇ to use as needed, e.g. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Tr. 83, 87, 88 (1655, 1659, 1660). These ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ throughout the school day. Tr. 87 (1659). ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇

15. When Ms. B. reviewed the data with staff to determine ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ helped decrease the student's problematic behaviors, they found the data inconclusive. Tr. 88 (1660). ▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇e. Tr. 89 (1661). ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and staff consider that "an emotional kind of coping technique" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and they agreed that ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ SD 90 (1662).

16. Ms. C., the district's behavior interventionist who heads up the team that works with ▇▇▇ has a background in behavior intervention ▇▇▇▇▇▇▇▇▇

████████████████████████ TR 105, 106 (SD 1291, 1292). She worked with ████. in kindergarten and was assigned full-time to her classroom. TR 108 (SD 1294). She reviews ████'s behavior charts and documentation to ensure that behavior is correctly documented and provides feedback to staff who work with ████. (TR 110, SD1296). The student's behavior had stabilized in the Spring of her kindergarten year, and the team began to plan for ████ first grade year. TR 111 (SD 1297). Ms. C. met with the staff that would work with ████. in first grade to discuss the student's behavior plan and also worked in the classroom to model how to implement the plan. *Id.* She met with the student's team bi-weekly and reviewed her behavior charts daily. *Id.*

17. Ms. C. reported that ████ had changed from kindergarten to first grade, when ████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████

18. ████'s aggressive behaviors have increased over her first grade school year. In the fall, she was redirected multiple times during the school day for behaviors such as interrupting the teacher, refusing to join the group, laying down on the carpet, not following directions, not lining up with the class, and being disrespectful. SD 221-225.However, she was able to remain in the classroom throughout the day. *Id.*

19. In October, her aggressive behaviors ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████ SD 226-276. She also required significantly more redirections beginning in October. *Id.* On October 12th, she walked out of the classroom and was aggressive toward staff and unresponsive to their redirections. SD 242-244. The staff shared the student's behavioral charts with the parent via email so that she was continually updated ████████ behaviors. SD 667-679, 682-711.

████████'s behavior notably changed in November, ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES

22. Between October and December, staff had to physically restrain ▓▓▓
numerous times. SD 576-617. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23. The IEP team, including the parent and her advocate, met again on
November 9th. SD 68. ▓▓ had refused to attend ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓. The parent requested a more specific crisis plan and
did not want the student moved to rooms that might contain unsafe items or
furniture the student could hide under. SD 87. District staff reported that ▓▓
was not responding to any choices or preferred adults. *Id.* The mother
requested a specified place that ▓▓ could use when she needed a break. *Id.*
The student had been "requesting breaks to avoid work, and she has a
difficult time returning from break." *Id.* ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓. SD 91. District staff did not
identify a specific room to which ▓▓ would be taken when in crisis because

the space needed to be determined by her needs. Testimony, Ms. C. However, the "418 room" was frequently used ███████████████████████

███████████████████████████████████ Ms. C.; Ms. M.

██ Pioneer does not have an isolated time out (ITO) room per the definition of an ITO room; however, some staff used terms such as isolated time out and low stimulus room interchangeably ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████

25. ██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Id. Each incident required

physical restraint and transport to contain the student's aggression toward staff. SD 581-600.. The student's behavioral charts were provided to the parent via email. SD 712-756.

26. ████ was physically restrained on December 13th after not complying with multiple redirections from staff ███████████████████████

████████████████████████ SD 608. She was held twice in a CPI

child hold. Id. Prior to the incident, the student had been un-engaged most of the day and had stated that she wanted to go home rather than to girl scouts or daycare. SD 610.

27. The parent took ████ to the doctor on December 15th because she was concerned that the student was injured during the recent restraint. PD 167, 168. According to the doctor's note, ████ "lateral scapula back area tender to touch. ███████████████████████████████████████████

████████████████████████████████████████ PD 167.

28. The next day, December 14th, █████████████████████████████
████████████████████████████ SD 614. Staff physically restrained
her and transported her out of the classroom. SD 613-617.

29. The IEP team, including the parent and the student's grandmother, met on
January 10, 2017. SD 94, 95. The parent's advocate attended by telephone. SD
97. The student's outside ███████████████████████████. SD 95.
Academically, ████ was doing well: she had mastered all of the 1st grade sight
words and was reading at an end of 1st grade level. SD 97. She also was
working at grade level in math. SD 103. ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████. SD 103. She
was able to read 200/200 first grade site words and was working at grade
level in math. *Id.*

30. However, the teacher was concerned because ████ was choosing not to do her
classwork. SD 97. ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████



The IEP team recommended isolated time out as a behavioral intervention that would be appropriate ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ ████████████████ SD 1342, 1343 (P. 156, 157). ██████ does not have an isolated time out (ITO) room. SD 1344 (P. 158). ████████ does have an ITO room. *Id.*

33. After reviewing the student's educational and emotional status, the IEP team discussed placement options. The district recommended a change of placement to ████████ School, where she would be placed in a regular education program for her academic subjects, would receive all of her current related services, and would also receive support in the community class. SD 99. The community class has a teacher, social worker, and two paraprofessionals. SD 99. ████████████ also has an isolated time out room, which could be used if ████ 's behavior severely escalates. *Id.*

34. In February and March 2017, the student's ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████. She had received early intervention services, so the educational impact on academic success is limited. Testimony, Ms. S. Tr. 226

(SD 1412). 
Tr. 262. She has a "good command of
language" and would be able to communicate her frustration. Tr. 243 (SD
1429).

35. The parent filed a complaint with the district office on February 28th
regarding how "she perceived that her daughter… was being treating by staff
and the DCFS complaint that she lodged against (Ms. M) regarding the
injuries (the parent) believes happen to (the student) as a result of contacts
with (Ms. M.). PD 223; SD 160. The complaint officer spoke with the parent,
observed for two days in the student's classroom, interviewed staff, reviewed
school records, and also reviewed DCFS and police records. Based on his
investigation, the complaint officer found that ▮▮▮ "appears to have a good
working relationship with (the classroom aide) and responds to her no
differently than she does to any other staff member. Additionally, (the
classroom aide) treats (the student) in a similar manner to all other students
in the classroom and there is no mistreatment towards (the student). The
injury concerns that were investigated by DCFS and ▮▮▮▮▮ Police were
unfounded with both departments concluding that there was no evidence of
wrongdoing. After completing a thorough investigation into (the parent's)
concerns, it has been determined that the evidence supports the findings that
were reported by DCFS and ▮▮▮▮▮ P.D., and that there is insufficient
evidence to support (the parent's) claims of abuse or wrongdoing toward (the
student) by any staff member." PD 233.

36. ▮▮ was suspended for one day at the end of February 2017. PD 236, 239. She
also was suspended from school for one day, March 16th, ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ PD 252.

37. An IEP meeting was held on April 17,2017, pursuant to the hearing officer's
expedited hearing order in Case 2017-0281. SD 1038. The parent was notified
of the meeting by email and telephone but did not attend. *Id.*; SD 1019. The
parent confirmed that she had received the meeting notice on April 13th. SD
1038. The IEP team amended the student's January IEP to "reflect placement
in CARES full time with access to Community Class supports… in addition to
her related services and transportation." SD 1038.

38. On April 19th, the mother requested homebound services for ▮▮ and
included a medical certification as a basis for her request. SD 1136, 1142. The

district held an IEP meeting on April 28th to review her request. SD 1057. The parent reported that ▮ " ▮▮▮▮▮▮▮▮▮▮▮ needed homebound for "stabilization until she can return to school." *Id.*, SD 1079. The student was

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ per her pediatrician's order and diagnosis of ADHD. SD 1058. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ *Id.*

39. The student's pediatrician, Dr. T., talked with school staff by telephone and completed the medical certification for homebound services. SD 1079; SD 1091. The certification indicates that the student has ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ *Id.* It also states that ▮▮ "has been very anxious & oppositional at school." *Id.* Dr. T. informed the school that ▮▮ was "easily redirected in his office" and that he wanted her to have programming that included "positive feedback." SD 1079. Dr. T. had neither spoken with school staff nor observed ▮▮ in school prior to writing his homebound request. Testimony, Dr. T. He also has never seen ▮▮▮. in her home setting. *Id.* All his information about the school, the student's programming, and the alleged basis of the student's injuries ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. *Id.* He was aware that the district was trying to "adjust" ▮▮▮▮▮ educational program. *Id* ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

▮ Dr. T. did not make the diagnosis of ▮▮▮▮▮▮, which is included on the homebound request *Id* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

42. The IEP team reviewed the placement options - general education 80% or more of the day; the ▮▮▮▮▮▮▮ 80% or more of the day in special education; and, homebound instruction. *Id.* After a discussion of ▮▮ 's educational needs, the placement list was revised to general education without support, general education with community, ▮▮▮▮, and homebound. *Id.* After considering the options and parent's concerns and

medical certification, the district determined that the ▮▮▮▮▮▮▮ is the appropriate program to meet ▮▮▮ needs and is also her least restrictive environment. SD 1080. The district denied the homebound request. *Id.*

45. The parties have stipulated to the educational background, licenses, and work experience of district staff who work with ▮▮▮ Joint Stipulations, Exh. D., IHO Record. Some staff testified to their CPI training: A.R.'s most current CPI training was in March 2016; -R (▮▮▮▮▮▮ Asst. Prn.) CPI trained and all ▮▮▮▮ staff are CPI certified; M.L. August 2015 CPI trained and attending training in two weeks, for 2-year retraining; C.S. CPI trained 9.21.15 and will be re-trained in September 2017; M.A.-S., trained as CPI trainer 6.15; J.M. CPI

training fall 2016; E.B., CPI trained fall 2016; M.W. CPI trainer, last training 23 years ago; L.C. 4 day CPI trainer course 10.16.

46. At the close of the hearing, the parent made a oral motion, asking the hearing officer to strike all testimony give by the district's behavior interventionist, L.C. The motion is based on the parent's assertion that the witness "had met and discussed testimony related to Isolated Time Out with District/Counsel." Motion, p. 1. The parent asserts that district's counsel tampered with the witness and influenced her testimony in the district's favor. *Id.* The Motion also asserts that the conduct of district's counsel is unethical. *Id.* The hearing officer orally denied the parent's Motion to Strike.

## CONCLUSIONS OF LAW

Based on the above factual findings, the parties' arguments, and the undersigned's own legal research, the hearing officer's legal conclusions are as follows:

Whether the January 10, 2017 IEP's proposed change of placement to the selfcontained ▮▮▮▮ program at ▮▮▮▮▮▮ School provides the student with a free appropriate public education (FAPE) in the least restrictive environment (LRE)[3].

The IEP offered to a student must provide "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017) ("Endrew F."). The adequacy of an IEP "turns on the unique circumstances of the child for whom it was created." *Id.* A student's IEP must include: a statement of the student's present levels of academic achievement and functional performance; the measureable goals designed to meet the student's needs that result from the student's disabilities; a description of the student's progress toward meeting the goals; a statement of the special education and related services that will be provided to the student; and the extent, if any, to

---

[3] It is noted for the record that the January 2017 IEP changes the student's placement to ▮▮▮▮ in the community class and regular education program. After the expedited hearing, the student's IEP was updated to reflect placement in the ▮▮▮ program, pursuant to the hearing officer's Order. The April 2017 IEP memorializes the student's placement to the ▮▮▮ program full-time. As memorialized in the prehearing conference reports, the issue is whether the proposed change of placement to the ▮▮▮ program at Wood View School provides the student with a free appropriate public education in the least restrictive environment. That is the issue discussed during the initial and final prehearings, and thus is the issue at hearing.

which the student will not participate with nondisabled peers in a regular class. 20 U.S.C. §1414(d)(1)(A)(i)(I)-(V). The parent's complaint in this case focuses on the last requirement, the extent to which ▮▮▮ will not participate with her nondisabled peers in a regular education class.

The student's January 10th IEP indicates that although ▮▮▮ was doing well academically, was at grade level in reading and math, and was making progress on ▮▮▮▮▮▮ her academic and functional levels of performance had declined. ¶ 29, 30. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶30. Staff tried to accommodate her refusal to attend related services by changing the times they worked with her and by providing services in the classroom; however, ▮▮▮ had difficulty with the push-in services and often declined to participate. *Id.* She was unengaged with her schoolwork and ▮▮▮▮▮▮▮▮



The student's emotional and behavioral needs increased throughout her first grade year and despite changes in service delivery, increased related service time, and intense behavioral support and intervention, the evidence supports a finding that ▮▮▮'s needs cannot be appropriately met in the general education setting. *Beth B. v. Van Clay and Lake Bluff School District* #65, 282 F.3d 493, 498 (7th Cir. 2002); *Board of Education of Township High School District No. 211 v. Michael R.*, 2005 WL 2008929, pp. 18, 19 (August 15, 2005). She was receiving little meaningful benefit from her general education placement or her related services.

███████████████████████████████████████████████

████████████████████████████ a conclusion that the general education setting is no longer an appropriate placement for her. ██████████████████

███████████████████████████████████████████████

██████████████████████████ She also will receive the same related services and minutes as is required in her January IEP. She will have the opportunity to participate with her peers in the general education environment as the IEP team decides is appropriate. Therefore, the evidence supports a finding that the ████████ program at ████████████, with participation in the general education setting as the IEP team deems appropriate, is the student's least restrictive environment.

Whether the student's behavioral needs require increased social work minutes, from ████████████████████████████████, as stated in the January 10, 2017 IEP.

The evidence shows that the school social worker noted concerning changes in the student's ████████████████████████████████████
██12. Ms. M. was part of the crisis team, and the increased service minutes reflect time that she was involved in crisis situation. ¶13 ████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Whether the student requires isolated time-out as part of her Behavior Intervention Plan (BIP).

The evidence shows that the student's behavioral needs increased in both scope and intensity throughout the 2016-17 school year. ¶5, 6, 13, 18-23, 25, 26. The staff's efforts to contain and address her behavior changed as over the school

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████ *Id.* The team considered isolated time out was considered at the January 2017 IEP meeting, focusing on the function of the ████████ behavior. ¶31. Because the student's behavior is attention seeking, the team determined that isolated time

out would address the need ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉ *Id.* Based on this evidence, the undersigned finds that isolated time out is required as part of the student's BIP.

<u>Whether the student requires placement in a co-taught classroom (i.e., both regular education and special education teachers) and a 1:1 full-time aide to meet her educational needs.</u>

The co-teacher in ▉▉▉ first grade classroom was a special education teacher who provided instruction to a special education student in the classroom. ¶1. ▉▉. does not have any academic/learning special education needs that require a special education teacher, e.g., a learning disability or an intellectual disability. Therefore, under the IDEA, there is no basis for her to have a special education teacher. The classroom aide, who was not assigned specifically to ▉▉▉ did spend time with ▉▉▉ ¶5. However, the parent has produced no evidence showing that ▉▉▉. needed an individual aide.

<u>Whether the district failed to provide a proper place for the student when she became escalated or needed time/space to cool down during the school day, from September 2016 through November 9, 2016.</u>

Prior to the significant increase in aggression and intensity of the student's behaviors in November, the staff were able to address the student's behavioral needs through increased services and change in service delivery. ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉ ¶22. The team frequently used the 418 room as the designated calm down space and

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thus, the evidence supports a finding that district did not fail to provide a proper place for the student to de-escalate.

<u>Whether the student required homebound services as of April 2017 and if so, whether the district's denial of homebound services denied the student a FAPE.</u>

Illinois special education regulations require that when a child id unable to attend school due to a medical condition that will cause an absence for two or

more consecutive weeks, the IEP team shall the need for home services. 23 IAC §226.300(a), (b). The request for homebound must include a physician's statement that specifies: "the child's medical condition; the impact on the child's ability to participate in education (the child's physical and mental level of tolerance for receiving educational services); and, the anticipated duration or nature of the child's absence from school." 23 IAC §226.300(b)(1-3). A district must conduct an IEP meeting when presented with a doctor's request for homebound instruction and determine whether the student's current IEP is reasonably calculated to allow the student to make appropriate progress in the student's least restrictive environment or whether a more restrictive placement is necessary. *Questions and Answers on Providing Services to Children with Disabilities During the H1N1 Outbreak*, 53 IDELR 269 (OSERS 2009). Homebound is the most restrictive placement on the continuum of special education placements and should be provided "only in those limited circumstances when they cannot be educated with other children even with the use of appropriate related services and supplementary aids and services." *DOE Commentary to Subpart E, §300.551* (IDEA Reauthorization). Homebound services should be provided only when "a more normalized process of education is unsuitable for a student who has severe health restrictions. *Department of Education, State of Hawaii v. Katherine D.*, 55 IDELR 276, 727 F.2d 809, 818 (9th Cir. 1983), cert. denied, 471 U.S. 1117, 112 LRP 25887 (1985).

In *Marshall Joint School District #2 v. C.D.*, 54 IDELR 307, 616 F.3d 632 (7th Cir. 2010) (*Marshall*), the court held that "a physician's diagnosis and input on a child's medical condition is important and bears on the team's informed decision on a student's needs....But a physician cannot simply prescribe special education; rather the Act dictates a full review by an IEP team composed of parents, regular education teachers, special education teachers, and a representative of the local education agency." It is concerning that the district was first informed of the student's bipolar disorder and medications prescribed for the disorder in the doctor's homebound request. ¶41. As testified to by the pediatrician, bipolar disorder is "an common diagnosis for a child" of ▆▆▆ age. ¶40. Additionally, Dr. T. had not spoken with school staff about his concern's regarding the student's educational needs prior to requesting homebound. ¶39. His knowledge of the student's school performance was ▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆. *Id.* While the doctor's input is important and must be considered as part of the homebound request, a doctor may not "prescribe special education." See, *Marshall*. The evidence shows the district reviewed the physician's request and the placement options, including homebound. After that

review, the district determined that the ▇▇▇▇ program is the student's least restrictive environment and thus denied the homebound request. ¶42. Based on the foregoing facts, the undersigned finds that the denial of homebound services in these circumstances was appropriate and not the student's least restrictive environment.

<u>**ORDER**</u>

IT IS ORDERED THAT:

The district shall convene an IEP meeting within 10 school days of receipt of this Order to revise the student's IEP to include:

1. Placement in the ▇▇▇ program at ▇▇▇▇▇▇▇

2. A plan to familiarize the student with her new placement prior to beginning at ▇▇▇▇▇▇, including but not limited to visiting the program and school, meeting staff, and developing tools to help the student make a successful transition to the new placement, e.g., social stories, maps of the school, familiarizing her with the new bus route and driver;

3. Provision of 20 hours of consultation by an independent licensed clinical psychologist with experience in evaluating children with behavior and emotional needs and psychiatric diagnoses such as this student has. The independent psychologist shall be chosen by the district and parent together; however, if the parties are unable to reach agreement on the selection, the district shall make the final selection after considering the parent's input. The independent psychologist shall review the student's educational records, observe the student in the ▇▇▇▇ placement, have access to the ▇▇▇ staff and other educational providers that s/he finds are necessary to understand this student's educational needs. The independent psychologist shall also have access to the student's treating physicians, including the psychiatrist, and the parent shall authorize that access in whatever forms are required by the district and physicians.

4. After the independent psychologist concludes the observations, records review, consultations with medical professionals, and whatever else the psychologist finds is necessary to understand this student's needs, the district shall convene an IEP meeting to discuss the independent

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES

psychologist's review and recommendations and to incorporate the
recommendations agreed upon by the parties or, if there is no agreement,
the recommendations that the district determines are necessary to provide
the student a free appropriate education.

Within 45 calendar days of receipt of this Order, Valley View Community
Unit School District 365U shall submit proof of compliance with #1 and #2 of this
Order to:

Illinois State Board of Education
Program Compliance Division
100 North First Street
Springfield, Illinois 62777-0001

Within 30 days of compliance with #3 and #4, the district shall submit
proof of compliance with those provisions to the ISBE.

### REQUEST FOR CLARIFICATION

Either party may request clarification of this decision by submitting a
written request for such clarification to the undersigned-hearing officer within
five (5) days of receipt of this decision. The request for clarification shall specify
the portions of the decision for which clarification is sought, and a copy of the
request shall be mailed to the other party(ies) and the Illinois State Board of
Education. After a decision is issued, the hearing officer may not make
substantive changes to the decision. The right to request such clarification does
not permit a party to request reconsideration of the decision itself, and the
hearing officer is not authorized to entertain a request for reconsideration.

### RIGHT TO APPEAL

This decision is binding on the parties unless a civil action is timely
commenced. Any party to this hearing aggrieved by this final decision has the
right to commence a civil action with respect to the issues presented in the
hearing. Pursuant to 105 ILCS 5/14-8.02a(i), that civil action shall be brought in
any court of competent jurisdiction within 120 days after a copy of this decision
is mailed to the parties.

ISSUED: August 21, 2017

Impartial Hearing Officer

RECEIVED 8/21/2017 - SPECIAL EDUCATION SERVICES

**March 28, 2017**

**Superintendent James Mitchem Jr.**
**755 Dalhart Ave.**
**Romeoville, IL 60446**

██████████████

**Illinois State Board of Education**
**Special Education Compliance Division**
**100 North First Street**
**Springfield, Illinois 62777-0001**

# RE: ██████████ and Valley View School District #365

# 2nd AMENDED

# Request for Due Process Hearing

**Name of student:** ██████████, "Student"

**Student's Address:** ████████████████████

**Date of Birth:** ████████

**Name of Parent/Legal Guardian:** **Susan Kuttner, Mother, pro-se presently**

**Telephone Number:** ██████████ **/ 866-751-6233 (Phone/Fax/Voicemail)**

██████████ **is currently attending her home school at:**
█████ **Elementary School,** ████████████████

Dear Superintendent James Mitchem Jr. & Mr. ██████████,

**I hereby file this 2nd AMENDED REQUEST FOR DUE PROCESS HEARING,**
**adding paragraphs A9-10, B8-9, C6-10 regarding Aides, Co-taught, and Isolated**
**Timeout changed January 10, 2017.**

This letter is a request for a due process hearing as described in the *Individuals with*
*Disabilities Education Improvement Act of 2004 (IDEA).* I seek leave to amend this
complaint at a later date should additional information become available.



**I previously FILED FOR A DUE PROCESS HEARING disputing the Placement change in the January 10, 2017 IEP/BIP, and an AMENDMENT filed February 2017 for social work minutes. Therefore, I now file this 2nd NEW DUE PROCESS FILING (3rd filing in total) TO ADITINOALLY DISPUTE THE JANUARY 10, 2017 Aides, co-taught classroom, and Isolated Timeout.**

**I request that current IHO (Hearing Officer)** ████████ **be appointed for this NEW due process proceeding and remain IHO assigned to our family's proceedings.**

**I hereby invoke Stay Put for** ████**. The Stay Put Placement for the Student will be at her current placement in her home school** ████ **Elementary, where she has attended since she began Kindergarten 1 ½ years ago.**

# A. Factual History/Nature of the Problem:

1. ████ is 6 ¾ years old and in 1st grade at ████ (Home) School

   ████████████████████████████████████████████

3. ████ is diagnosed with ADHD and mixed disorders
   ████ is under the care of doctors to determine specific diagnoses for: ████

5. IEP/BIP meetings conducted on: September 20, 2016, (October 18, 2016 with ████ which resulted in a proposed/withdrawn amendment), November 9, 2016, **January 10, 2017**
6. Parent attempted to work with the IEP ████ school team to help ████ by revising the BIP, making a clear plan for ████, proposing and requesting changes to staffing assignments/staff/aide etc.
7. Parent objects to the Student's Placement change
8. Student's minutes for social work were also changed in the January 10, 2017 meeting and Parent objects to the increase roughly from ████ minutes for social worker.
9. **Student's IEP/IP also changed in the January 10, 2017 to add Isolated Timeout (at** ████**)**
10. **Student has never been assigned to a co-taught classroom nor has she had a one-on-one, full-time aide.**

# B. Issues & Description of the Dispute:

1. ████ IEP/BIP meeting conducted on September 20, 2016 did not have a specific plan for de-escalation with positive BIP in ████ BIP and Parent requested more detail and specific location, plan, etc. to be written more clearly for times that ████ acts out. In response, District's ████ arranged to meet Parent on October 18, 2016

2. On October 18, 2016 Parent met with ▓▓▓▓▓ which resulted in a proposed and immediately withdrawn amendment. Parent had asked for a more specific plan to identify rooms, tactics, etc. and the District instead wrote a more vague general crisis plan allowing them to call police/ambulance for behavior management of ▓▓▓ with more lenient guidelines which was not acceptable to the Parent.

3. On November 9, 2016, school district #365 and the ▓▓▓ Elementary school IEP team changed ▓▓▓ BIP despite Parent's objections. The District added to the BIP crisis plan and under disciplinary measures that they may use police/ambulance/district policy in ▓▓▓ BIP. This was not acceptable to Parent.

4. In Mediation January 17, 2017, Parent and District did resolve the Due Process involving the November 17, 2016 Due Process Filing and herein I have withdrawn that Due Process which stemmed from the November 9, 2016 IEP/BIP

5. Parent NOW disputes the Placement change in the January 10, 2017 IEP/BIP. Therefore, Parent now files this NEW DUE PROCESS REQUEST TO DISPUTE THE JANUARY 10, 2017 PLACEMENT CHANGE.

6. Immediately following the IEP BIP school/District decision to change Student's placement on January 10, 2016, Parent requested the District attempt multiple other options in leiu of the placement change in the same meeting. However, District refused.

7. Student's minutes for social work were also changed in the January 10, 2017 meeting and Parent objects to the increase roughly from ▓▓▓ minutes for social worker. Parent wishes to review these minutes through the Due Process proceedings.

8. **Student's IEP/IP also changed in the January 10, 2017 to add Isolated Timeout (at ▓▓▓▓). Parent objects to use of Isolated Timeout.**

9. **Student has never been assigned to a co-taught classroom nor has she had a one-on-one, full-time aide. Parent hereby requests both to support Student at her home school ▓▓▓ in her LRE. Parent additionally asked District to change the staff member serving Student and replace the classroom Aide to another staff member.**

# C. Proposed Resolution:

I am seeking the Hearing Officer to order the following:

1. Student's Placement shall remain in her general education class at her home school which she currently attends at ▓▓▓ Elementary School. The district will provide Student with any and all additional supports including accommodations, services, equipment, staff/aides/staff changes/one-on-one aide, and assistance necessary to support and accommodate Student's ▓▓, ADHD, ▓▓▓▓▓▓▓▓▓▓▓▓▓, etc. disabilities or OHI/ED qualifications.

2. The acceptable portion of Student's IEP/BIP be implemented to included the agreed upon verbage.

3.  Stay put will be implemented and ████ Elementary School (her home school) will be the stay put Placement for the duration of the due process hearing process.
4.  Clear ████ permanent school record as appropriate and reasonable.
5.  Student's minutes for social work will be adjusted/changed according to Parent/IHO to a number of minutes between ████ minutes for the social worker.
6.  **Student be assigned a 1-on-1 Aide**
7.  **Student be assigned a full time Aide**
8.  **Student be assigned an Aide other than Miss ████**
9.  **Student be assigned to a co-taught classroom in her General Education home school**
10. **Isolated timeout remains removed from Student's IEP/BIP**

Thank you for your time and consideration in this matter. Please confirm receipt and continue to assign IHO ████.

Sincerely,

Parent ████, Mother

866-751-6233 (Phone/Fax/Voicemail)

cc: IHO (Hearing Officer) ████ & ████
    Superintendent James Mitchem Jr.
    Erica Ekstrom, District Rep.
    ████, Parent Advocate



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

**James T. Meeks**
Chairman

**Tony Smith, Ph.D.**
State Superintendent of Education

July 31, 2017

Director of Special Education
Valley View Community Unit School District 365U

Romeoville, IL 60446

and

Superintendent
Valley View Community Unit School District 365U
755 Dalhart Avenue
Romeoville, IL 60446

Re: ▇▇▇▇▇▇▇ Complaint
Case Number ▇▇▇▇

Dear ▇▇▇▇▇▇▇ :

The Illinois State Board of Education, Special Education Services Division, has completed its investigation of the complaint lodged by ▇▇▇▇▇▇ in regard to the special education services ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Authority for conducting this investigation is the Individuals with Disabilities Education Act, P.L. 108-446, 34 CFR, 300.151 - 300.153.

The review focused on the following requirements:

### 34 Code of Federal Regulations, §300.116(a-e), which states in part

*In determining the educational placement of a child with a disability, including a preschool child with a disability, each public agency must ensure that- a) The placement decision—*
*1) Is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options;*



b) The child"s placement-
   1) Is determined at least annually;
   2) Is based on the child's IEP; and
   3) Is as close as possible to the child's home;
c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if nondisabled;
d) In selecting the LRE, consideration is given to any potential harmful effect on the child or on the quality of services that he or she needs; and
e) A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum.

### 34 Code of Federal Regulations, §300.324(a)(1)(ii), which states a)
Development of IEP-
   1) General. In developing each child's IEP, the IEP Team must consider-
   ii) The concerns of the parents for enhancing the education of their child;

### 23 Illinois Administrative Code, 1.285, which states in part
Isolated time out and physical restraint as defined in this Section shall be used only as means of maintaining discipline in schools (that is, as means of maintaining a safe and orderly environment for learning) and only to the extent that they are necessary to preserve the safety of students and others. Neither isolated time out nor physical restraint shall be used in administering discipline to individual students, i.e., as a form of punishment. Nothing in this Section or in Section 1.280 of this Part shall be construed as regulating the restriction of students' movement when that restriction is for a purpose other than the maintenance of an orderly environment (e.g., the appropriate use of safety belts in vehicles).
f)  Documentation and Evaluation
 1)  A written record of each episode of isolated time out or physical restraint shall be maintained in the student's temporary record. The official designated pursuant to Section 1.280(c)(3) of this Part shall also maintain a copy of each such record. Each such record shall include:
   A)  the student's name;
   B)  the date of the incident;
   C)  the beginning and ending times of the incident;
   D)  a description of any relevant events leading up to the incident;
   E)  a description of any interventions used prior to the implementation of isolated time out or physical restraint;
   F)  a description of the incident and/or student behavior that resulted in isolated time out or physical restraint;
   G)  a log of the student's behavior in isolated time out or during physical restraint, including a description of the restraint technique(s) used and any other interaction between the student and staff;
   H)  a description of any injuries (whether to students, staff, or others) or property damage;
   I)  a description of any planned approach to dealing with the student's behavior in the future;

J)   a list of the school personnel who participated in the implementation, monitoring, and supervision of isolated time out or physical restraint;

K)   the date on which parental notification took place as required by subsection (g) of this Section.

g)   Notification to Parents

2)   Within 24 hours after any use of isolated time out or physical restraint, the school district or other entity serving the student shall send written notice of the incident to the student's parent(s), unless the parent has provided the district or other entity with a written waiver of this requirement for notification. Such notification shall include the student's name, the date of the incident, a description of the intervention used, and the name of a contact person with a telephone number to be called for further information.

h)   Requirements for Training

2)   Physical Restraint

A)   Physical restraint as defined in this Section shall be applied only by individuals who have received systematic training that includes all the elements described in subsection (h)(2)(B) of this Section and who have received a certificate of completion or other written evidence of participation. An individual who applies physical restraint shall use only techniques in which he or she has received such training within the preceding two years, as indicated by written evidence of participation.

### 23 Illinois Administrative Code, 226.100(a)(2), which states

a)   Each school district shall be responsible for actively seeking out and identifying all children from birth through age 21 within the district (and those parentally-placed private school children for whom the district is responsible under 34 CFR 300.131) who may be eligible for special education and related services. Procedures developed to fulfill the child find responsibility shall include:

2)   Ongoing review of each child's performance and progress by teachers and other professional personnel, in order to refer those children who exhibit problems which interfere with their educational progress and/or their adjustment to the educational setting, suggesting that they may be eligible for special education and related services.

### 23 Illinois Administrative Code, 226.200, which states

Each school district shall provide special education and related services to eligible children in accordance with their IEPs.

### 23 Illinois Administrative Code, 226.800(a)(1), which states a)

General

1)   Each school district, or the cooperative entity of which it is a member, shall employ sufficient professional and noncertified personnel to deliver and supervise the full continuum of special education and related services needed by the eligible students who reside in the district. The number and types of personnel employed shall be based on students' need rather than administrative convenience.

## *Background and Summary of Allegations*

### Student A

The parent alleged the following violations of special education rules and regulations between August 2015 and January 2016 specific to Student A:

1. The district failed to follow proper procedures for determining the student's special education placement. The parent stated that the student's December 2015 placement was predetermined by the school team and was not in the Least Restrictive Environment (LRE).
2. The district failed to consider the concerns of the parent in developing the student's Individualized Education Program (IEP).
3. The district failed to follow proper procedures for the use of isolated time out and physical restraint. Specifically, the parent alleged that the district failed to appropriately utilize isolated time out and physical restraint. Further, the parent alleged violations of the documentation, parent notification, and staff training requirements specific to the use of isolated time out and physical restraint.
4. The district failed to fulfill its child find responsibility specifically with regard to the identification of the student's secondary eligibility.
5. The district failed to implement the student's Behavioral Intervention Plan (BIP). Specifically, the parent alleged that the district failed to implement positive behavioral interventions, utilize a behavior chart, and provide information to the parent in accordance with the IEP/BIP.
6. The district failed to provide the student with an individual aide in December 2015.
7. Staff working with the student were not properly licensed.

### Student B

As stated in previous correspondences from this agency, the issues identified specific to Student B could not be resolved through the state-level special education complaint process and were not addressed as part of this investigation. Therefore, all references to "the student" throughout the body of this letter are specific to Student A.

## *Action Taken in Response to the Complaint*

During the course of the investigation, telephone and email communications regarding the issues in the complaint occurred with the parent, the director of special education, and the attorney representing the district.

## *Documentation Reviewed*

The following documentation, submitted by the parties, was reviewed as part of the investigation:

**Received from District:**

1.  An October 6, 2016 letter from the attorney representing the district addressing each of the issues identified in the complaint.
2.  IEP documentation dated May 4, 2015, May 28, 2015, September 29, 2015, October 1, 2015, October 15, 2015, October 27, 2015, December 1, 2015, December 16, 2015, February 23, 2016, and September 20, 2016.
3.  Documentation of the parties' participation in state-sponsored mediation, dated January 13, 2015.
4.  A December 10, 2015 *District Request for an Impartial Due Process Hearing Officer,* the parent's December 10, 2015 letter requesting a due process hearing, the January 6, 2016 Status Conference Summary, and the February 24, 2016 Order of Withdrawal from the impartial hearing officer.
5.  A January 12, 2016 letter of complaint from the parent previously filed with this agency.
6.  An October 1, 2015 Incident Report.
7.  Various behavior data collection tools, including daily point sheets and anecdotal notes, dated September 9, 2015 through January 29, 2016.
8.  Various behavioral data charts created by the district's board certified behavioral analyst (BCBA) based on data collected between September 9, 2015 and December 14, 2015.
9.  Observation notes from a BIP fidelity check conducted by the BCBA on October 20 and 22, 2015.
10. Licensure information for each staff member that worked with the student during the 2015-16 school year.
11. Documentation specific to student discipline, including Non-Violent Physical Crisis Intervention Administration Procedures/Crisis Team Procedures; a PowerPoint presentation entitled "Student Discipline: Use of Physical Restraint;" Physical Restraint, Isolate Time Out, and Crisis Response Procedures; school board policies specific to student discipline, including Misconduct by Students with Disabilities (7:230) and Student Discipline (7:190); and the portion of the student handbook specific to student discipline (pages 10-16).
12. A list of staff trained on the safe application of physical restraint.
13. Various email communications that occurred during September through December 2015.

## Received from Complainant:

1.  The formal letter of complaint dated August 15, 2016 and a September 1, 2016 follow up email clarifying the issues of the complaint.
2.  Letters of complaint, dated July 8, 2014 and January 12, 2016, previously submitted to this agency.
3.  A December 10, 2015 letter from the parent to the district requesting a due process hearing.
4.  A December 10, 2015 letter from the parent to the ISBE mediation coordinator requesting State-sponsored mediation.
5.  A May 28, 2015 *Parent/Guardian Notification of Individualized Education Program Amendment* attached to the student's April 13, 2015 IEP.
6.  Daily Point Sheets from December 1, 2015 through December 11, 2015.

7.  A copy of the district's Non-Violent Physical Crisis Intervention Administration Procedures/Crisis Team Procedures and Board Policy 7:230 Misconduct by Students with Disabilities
8.  A September 9, 2015 email from the general education teacher to the parent.
9.  A November 2, 2015 email exchange between the parent and district staff regarding the scheduling of parent/teacher conferences.
10. A September 23, 2015 Direct Service Report completed by a ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Behavior Coach from the Illinois Service Resource Center.
11. A September 29, 2015 Screening, Assessment, and Support Services (SASS) Recommendations for Caretaker form.

## *Student Information*

During the 2015-16 school year, the kindergarten student was eligible for special education and related services under the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ She was placed in the general education setting for 80% or more of the school day and received direct and consult services for ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in various settings (inside and/or outside general education). Multiple IEP team meetings/amendments were conducted on behalf of the student relevant to this complaint investigation, as follows:

- May 4, 2015—Amended the student's April 13, 2015 IEP to reflect the development of a BIP
- May 28, 2015—Amended the student's BIP
- September 29, 2015—Conducted annual review meeting and initiated a reevaluation
- October 1, 2015—Amended the *Educational Accommodations and Supports* to include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- October 15, 2015—Reviewed/revised the IEP and reviewed the BIP
- October 27, 2015—Reviewed/revised the IEP
- December 1, 2015—Reviewed/revised the IEP and reviewed placement
- December 16, 2015—Reviewed/revised the IEP and reviewed the Functional Behavioral Assessment (FBA) and BIP
- February 23, 2015—Reviewed/revised the IEP

## *Findings/Conclusions*

### Issue 1 – Placements {34 CFR §300.116}

### A. Predetermination

No violation is found as explained below:

The parent alleged that the district failed to follow proper procedures for determining the student's special education placement. Specifically, the parent stated that the student's December 2015 placement was predetermined by the school team, as

evidenced in a September 23, 2015 Direct Service Report conducted by a ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ Behavior Coach from the Illinois Service Resource Center (ISRC). The report states, in part, "...*Several members of the team question if [the school] is an appropriate placement for [the student]*." According to the parent, this statement suggests months of predetermination.

The district denied this allegation, stating that the student's December 1, 2015 placement decision was made by the team after careful consideration of formal standardized assessment results, an outside evaluation report, and input from district staff (e.g., teachers, related service providers), the parent, the grandparent, the family advocate, and an independent psychologist. Further, the district reported that multiple IEP team meetings were convened over the course of the 2015-16 school year in order to review data and consider what supports could be put in place in the general education setting, prior to changing the student's placement.





Based upon the documentation provided, the student's placement was determined after thorough discussion by a team of individuals at an IEP team meeting convened on December 1, 2015. The statement from the September 23, 2015 report referenced by the parent does not suggest that the student's placement was decided in advance of the December 1, 2015 IEP team meeting. As such, no violation is found.

## B. Least Restrictive Envrionment (LRE)

The following violation is found as explained below:

The parent alleged that the student's December 2015 placement was not in the Least Restrictive Environment (LRE). The district denied this allegation, stating that the proposed placement in a specific special education program within the district was never implemented because the parent requested a due process hearing on December 10, 2015, which invoked the stay-put provision. Further, the subsequent resolution on January 13, 2016 provided for the student's continued placement in the

general education setting. Therefore, according to the district, this issue is entirely moot because the student's placement never changed.

The district stated that a review of the records demonstrates that the *Additional Notes/Information* for each of the September, October, and December IEP team meetings are thorough accountings of the district's intensive consideration of data in making the determination that placement in the therapeutic environment of the district's ▐▐▐▐▐▐▐▐ program was appropriate for the student. Additionally, this determination came after consideration of the student's continued disruptive and unsafe behaviors in the general education setting, despite the intense level of supports, including a social worker or behavior intervention specialist who was in the classroom during the entire school day to assist with the student and ensure the safety of the student and others. The team concluded that, even with the addition of highly trained behavioral staff within the general education setting, the student's behaviors remained significant and limited her progress. Therefore, the team considered placement along the continuum of services in an effort to adequately meet the student's need.

As previously stated in Issue 1A, the student's placement was changed to a specific special education program within the district at the December 1, 2015 IEP team meeting. Per the district website, this program is designed to provide intermediate to intense social/emotional, as well as academic instructional support to students primarily in a small structured learning environment.

A review of the December 1, 2015 IEP provided the following information:

Present Levels of Academic Achievement and Functional Performance



- The *Student"s Present Level of Academic Achievement* includes information from September 2015 specific to the student's speech. Additional information was added at the December 1, 2015 meeting, also specific to the ▐▐▐▐▐

- The *Student"s Present Level of Functional Performance* includes information regarding her hearing, dated April 13, 2015 and September 29, 2015. Additional information was documented on October 27, 2015 regarding the student's ▐▐▐▐▐▐▐ However, no updated information was provided in December 2015.

- The description regarding the effect of the student's disability on her involvement and progress in the general education curriculum and the functional implications of the student's skills is dated October 27, 2015. This section includes information regarding the student's medical diagnoses and special education eligibilities. Further, this section states that, in addition to supports to address her ▐▐▐▐▐▐▐▐▐▐▐ the student would benefit from direct skill instruction related to social-emotional functioning and ▐▐▐▐▐

Goals and Objectives/Benchmarks

- The December 1, 2015 IEP provided by the district includes one speech goal. No other academic or functional goals were attached to the document submitted by the district.

Educational Services and Placement

- The placement proposed by the district team included 1375 minutes per week in the district's ▮▮▮▮▮▮ program with participation in the general education setting for special classes (art, physical education, music, etc.) with paraprofessional support and lunch/recess with paraprofessional support. The proposed placement also included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- The *Educational Environment Considerations* section indicates that the student required small group integrated and direct social emotional support.

FBA/BIP

- The December 1, 2015 IEP document provided by the district did not include a FBA or BIP.

Additional Notes/Information

- With regard to the proposed placement, the district explained that the student would receive integrated social emotional support in a program with a low adult to student ratio.
- The district team determined that the district's ▮▮▮▮▮▮ program was the least restrictive and most appropriate placement because, despite the implementation of various interventions, the student's progress was limited.

Behavioral Data

- Various behavior data charts were attached to the IEP document, including data collected between September 9, 2015 through November 23, 2015 specific to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ time out of class, duration unengaged in classroom/duration of non-compliance, average redirections per hour, and daily points.

Although the placement proposed at the December 1, 2015 team meeting was never implemented, the information documented does not support placement in a program designed to provide social/emotional support. The district stated that the notes from the meetings in September, October, and December demonstrate the thorough

accountings of the district's intensive consideration of data, which ultimately led to the therapeutic placement. However, in isolation, the December 1, 2015 IEP document provided does not include information specific to the student's social emotional needs. Specifically, while the *Present Levels of Academic Achievement and Functional Performance* state that the student would benefit from direct socialemotional skill instruction, there is no information specific to the student's socialemotional deficits or an explanation regarding how those deficits impact the student's education. Further, the December 1, 2015 IEP did not include any socialemotional goals or a FBA/BIP. Additionally, the district collected behavioral data on behalf of the student, but documented no analysis or summary to show that the student's placement determination was based on the data. If the December 1, 2015 IEP was intended to supplement the student's previous IEPs, a copy of the relevant information from the previous IEPs should have been attached to provide additional support for the placement decision.

## Issue 2 - Development, Review, and Revision of IEP {34 CFR §300.324}

No violation is found as explained below:

The parent alleged that the district failed to consider her educational suggestions, concerns, input, and direction in developing the student's IEPs, including the BIPs, between August 2015 and January 2016





Based upon this documentation, there is no indication that the district failed to consider the parent's educational concerns.

**Issue 3 - Requirements for the Use of Isolated Time Out and Physical Restraint {23 IAC 1.285}**

**A. Use of Isolated Time Out and Physical Restraint**

### i. Isolated Time out

The following violation is found as explained below:

The parent alleged that the district failed to appropriately utilize isolated time out. Specifically, the parent alleged that the district misused the alternative intervention room, isolation, seclusion, and office spaces.

According to the district, classroom removals did occur to address unsafe or threatening behaviors due to physical aggression, but isolated time out was not utilized. The district contends that, per the student's October 27, 2015 BIP, one strategy used by the district to reinforce positive behaviors and minimize rewards for problem behaviors was to transport the student to a space with minimal distractors and implement planned ignoring.

Additionally, in times of crisis, the same space was used to stabilize the student. According to the district, this space, referred to as the alternative intervention or low stimulation room, was not intended to be utilized as an isolated time out room, particularly because the door to the room did not lock so it was not possible to isolate the student in the room and restrict her egress. Further, the district stated that, in practice, staff were always present in the room with the student. The district also reported that the student was never physically prevented from leaving the room, but a staff member would stand in the room in front of the doorway or in the doorway of the room if the student's behavior escalated.

A review of the student's October 27, 2105 IEP, *Additional Notes/Information* section, noted that when in the "low-stimulation" room, an adult will start out in the door way, but if the student becomes aggressive, the team will step out and stay within two feet and have visual proximity.

A review of the documentation indicates that each BIP in effect between August 2015 and January 2016 included a *Crisis Plan* that provided for the use of a time out procedure. Specifically, the BIPs allowed for the use of a time out procedure when the student displayed unsafe behaviors, which were identified in the *Crisis Plan* as climbing, knocking over furniture, kicking, and hitting. During those periods of time, the student would be removed to the low stimulation room.

Based upon the documentation, the student was removed from the classroom to staff offices due to disruptive behavior on various occasions as identifed below.

| Date | Description of Removal |
|------|------------------------|
| September 9, 2015 | An incident occurred in which the student was hitting, kicking, head butting, and biting the teacher. The student was removed from the classroom to the social worker's office. |
| September 17, 2015 | The student was removed from the classroom to the principal's office after punching the psychologist in the face. |

14

| September 18, 2015 | The student was removed from the classroom to the office after hitting, biting, and kicking the speech language pathologist and psychologist. |
| September 22, 2015 | At approximately 10:05 a.m., the student left the classroom with the assistant principal after kicking another student, throwing classroom items, kicking objects, and pushing the psychologist. The student returned to the classroom at 10:30 a.m. At approximately 12:24 p.m., the student was taken to the office by the principal after hitting another student in the face with a seat. The student returned to the classroom at 1:15. Subsequently, the student was escorted to the office at approximately 2:27 p.m. after hitting the behavior interventionist, trying to bite others, and climbing on furniture. |
| September 24, 2015 | The student was removed to the psychologist's office after hitting, pushing, kicking, and biting the psychologist, hitting peers, hitting the teacher, and climbing on furniture. |
| November 3, 2015 | The student was removed to the nurse's office for noncompliance after walking out of the gym during physical education. |

Additionally, the following list identifies removals to the low stimulation room that occurred:

| Date | Description of Removal |
| --- | --- |
| October 21, 2015 | An incident occurred in which the student was removed to the low stimulation room due to aggressive behaviors after hitting the social worker. |
| November 12, 2015 | The student was transported to the alternative intervention room after kicking the substitute social worker. |
| November 23, 2015 | At approximately 9:30 a.m., the student was transported, using CPI transport, to the alternative intervention room for hitting and kicking staff. The student was removed from the classroom to the alternative intervention room at approximately 1:30 p.m. for kicking at the substitute social worker and on-going noncompliance. |
| December 2, 2015 | The student was removed from the classroom to the alternative intervention room in order to calm down after continued noncompliance. |
| December 15, 2015 | The student was guided (use of two person Crisis Prevention Intervention (CPI) transport) to the alternative intervention room after pushing the teacher and throwing items at the class. |

Isolated time out is defined in the Illinois Administrative Code at 1.285 as the confinement of a student in a time-out room or some other enclosure, whether within

or outside the classroom, from which the student's egress is restricted. Situations may occur in which district staff use a behavior management technique to separate a student for purposes of calming which may not be considered "isolated time out" (i.e. to the office). However, in this particular situation, the student's BIP specifically indicated that a time out procedure would be utilized when the student displayed unsafe behaviors, such as climbing, knocking over furniture, kicking and hitting and would be removed to a low stimulation room.

### ii. Physical Restraint

The parent alleged that the district failed to follow proper procedures for the use of physical restraint. According to the district, physical restraint is utilized in an effort to maintain a safe and orderly learning environment and only after appropriate positive, less restrictive behavioral interventions are ineffective. The district indicated that there was only one incident in which physical restraint was utilized with the student, which occurred on October 1, 2015, because the student posed a physical risk to staff.
A reivew of the documentation indicates that a BIP was developed via the IEP amendment process on May 5, 2015. The Crisis Plan states that physical restraint would be used if the student became a danger to self or others. Each subsequent BIP developed during the timeframe identified by the parent (August 2015-January 2016), dated May 28, September 29, October 15, October 27, and December 16, 2015, includes the same language regarding physical restraint.

Based upon the documentation, a Crisis Prevention Intervention (CPI) "hold" was implemented on October 1, 2015 due to aggressive behaviors. Additionally, the following list identifies some of the removals that included the use of physical restraint "transport":

| Date | Description of CPI Transport |
|---|---|
| September 29, 2015 | Using CPI transport, the student was guided to the alternative intervention room after kicking other students and kicking and punching the teacher in the face. |
| October 21, 2015 | Using CPI transport, an incident occurred in which the student was removed from the classroom due to aggressive behaviors after hitting the social worker. |
| November 12, 2015 | The student was transported to the alternative intervention room after kicking the substitute social worker. |
| November 23, 2015 | Using CPI transport, the student was guided to the alternative intervention room for hitting and kicking staff. |
| December 15, 2015 | Using CPI transport, the student was guided to the alternative intervention  room after pushing the teacher and throwing items at the class. |

Physical restraint is defined in the Illinois Administrative Code at 1.285 as the means of holding a student or otherwise restricting his or her movements. In this particular

situation, the student was removed from the classroom using physical restraint techniques.

## B. Documentation of Isolated Time Out and Physical Restraint

### i. Isolated Time Out

The following violation is found as explained below:

The parent alleged that the district failed to follow proper procedures for documenting the use of isolated time out. According to the district, there was no use of isolated time out. However, the district stated that the alternative intervention reports provided details of the student's removals from the classroom.

The district submitted the following documents:

* A report log for the low stimulation room specific to October 21, November 12, November 23, December 2, and December 15, 2015. The log included the date/time, student, activity/subject, antecedent, target behavior, behaviors demonstrated during the time in the low stimulation room, follow-up supports in place, and staff member name.
* Daily point sheets from October 2015-January 2016 that noted the student's behavior and included detailed notes regarding each incident (i.e. the date, time, description of events, interventions, and behavior, and the involved staff members).
* Charts that included the students name, date, time, class activity, behavior, antecedents, consequences and notes.

As identified above in Issue 3(A)(i), it was determined that isolated time out procedures were utilized. Therefore, documentation would be required. The materials, submitted by the district, included very detailed documentation of the student's behavior on a daily basis, including the dates and times the student was removed from the classroom.

The Illinois Administrative Code at 1.285 identifies the requirements for each such record to include the student name, date, time, events leading up to the incident, interventions used, student behavior, planned approach to dealing with the behavior, a list of involved school personnel, and the date on which parental notification took place. In this situation, the district included all information with the exception of the description of any injuries or property damage and the date on which parental notification took place.

### ii. Physical Restraint

The following violation is identified as explained below:

The parent alleged that the district failed to follow proper procedures for documenting the use physical restraint.

As identified above Issue 3(A)(ii), it was determined that physical restraint procedures were utilized. Therefore documentation would be required. The materials, submitted by the district, included very detailed documentation of the student's behavior on a daily basis, including the dates and times the student was removed from the classroom utilizing CPI control and CPI hold.

The Illinois Administrative Code at 1.285 identifies the requirements for each such record to include the student name, date, time, events leading up to the incident, interventions used, student behavior, description of any injuries, planned approach to dealing with the behavior, a list of involved school personnel, and the date on which parental notification took place.

In this situation, the district included all information with the exception of the description of any injuries or property damage and the date on which parental notification took place.

## C. Parent Notification

### i. Isolated Time Out

The following violation is found as explained below:

The parent alleged that the district failed to follow proper parent notification procedures for the use of isolated time out.

Although very detailed reports of the students behavior were maintained by the district, it is unclear whether or not this information was provided to the parent, and if so, when it was provided.

### ii. Physical Restraint

The following violation is found as explained below:

The parent alleged that the district failed to follow proper parent notification procedures for the use of physical restraint.

The district provided an October 1, 2015 email to the parent from the school social worker with an anecdotal log of the student's behavior, which includes information regarding the use of physical restraint. This documentation meets the parental notification requirements outlined in 23 IAC 1.285. However, as identified above, it was determined that other physical restraint procedures were utilized. Therefore notification would be required of the other incidents of physical restraint.

## D. Staff Training Requirements

The following violation is found as explained below:

The parent alleged that the district failed to properly train staff on the use of isolated time out and physical restraint.

The district indicated that the principal, assistant principal, two behavior interventionists, two social work substitutes, social worker, psychologist, special education teacher, and security guard had received training on the safe application of physical restraint. Although the district maintained detailed notes, it is unclear which staff members were involved in the CPI tranports that occurred on October 21, 2015, November 12, 2015, November 23, 2015, and December 15, 2015.

### Issue 4 - Child Find Responsibility {23 IAC 226.100}

No violation is found as explained below:

The parent alleged that the district failed to fulfill its child find responsibility specifically with regard to the identification of the student's secondary eligibility. According to the parent, the district failed to recognize and identify the student's needs. The district maintains that it has, at all times, appropriately identified and evaluated the student in all relevant domains, in a timely manner, and that all evaluations were sufficiently comprehensive to identify her strengths and areas of need.





**Issue 5 - General Requirements {23 IAC 226.200}**

## A. Implementation of BIP

The following violation is found as explained below:

The parent alleged that the district failed to implement the student's BIP during the first several weeks of the 2015-16 school year. The district denied this allegation, stating that IEP team meetings were convened on September 29, 2015, October 15, 2015, October 27, 2015, December 1, 2015, and December 16, 2015 specifically to discuss and review the implementation of the student's BIP, behavior tracking, and to provide information to the parent in accordance with the IEP/BIP. Further, the district reported maintaining substantial amounts of data on the positive interventions that were utilized, the student's behavior, and the analysis of the data points. However, despite the district's efforts, the student was rarely compliant, required constant redirection, and engaged in physical aggression, verbal threats/intimidation, and destructive/unsafe behaviors.

The BIP in effect at the beginning of the 2015-16 school year was developed on May 4, 2015 and was added to the student's April 13, 2015 IEP as an amendment. The BIP was documented as a related service on the *Educational Services and Placement* page and was developed to address the target behaviors of hitting, kicking, biting, and climbing on/knocking over furniture, which were occurring, on average, four times per day. On May 28, 2015, the BIP was reviewed by the team and revised to reflect more current data.

As previously stated, the 2015-16 school year started on August 19, 2015. However, according to the *Additional Notes* included with the BIP in the student's September 29, 2015 IEP, the school psychologist entered a note, dated August 26, 2015, which states:

*"[The student] is not exhibiting these negative behaviors at this time. The team is suspending the BIP at this time and will review her progress in six weeks (or sooner, if needed) to determine the appropriateness of the BIP for [the student]."*

Subsequently, the *Additional Notes* from the October 15, 2015 meeting state:

*"Please note the term „suspended" was intended to mean that the BIP was on hold until [the student] exhibited significant behaviors or ceased responding to the classroom-wide behavioral system. [The parent] was informed via email on September 7, 2015 that the BIP was not needed at that time as [the student] was not displaying any behaviors and was responding to the classroom intervention system. The BIP was resumed on September 9, 2015."*

Based upon the information provided, the student's BIP was not implemented for approximately nine school days. Further, the documentation provided does not indicate that a formal IEP amendment was conducted on August 26, 2015 when the school psychologist added the note regarding the suspension of the student's BIP. Therefore, if the student's BIP was suspended on August 26, 2015 and the parent was notified via email on September 7, 2015, this information would suggest that the parent was not involved in the decision to suspend the student's BIP. As such, a violation is found.

### i. Positive Behavioral Interventions

No violation is found as explained below:





## ii. Use of Behavior Chart

The following violation is found as explained below:

The parent alleged that the district did not utilize a particular daily behavior chart with the student until mid-September 2015. Specifically, the parent stated that the team refused to use a "smiley chart" and referenced a September 2015 email from the student's teacher. Further, the parent alleged that such behavior charts were not completed by staff in 15 minute increments. Rather, the behavior charts were completed at the end of each day.

The district acknowledged that the student's behavior was not specifically tracked utilizing the smiley chart during the first two weeks of the 2015-16 school year. Despite the student's history of difficult behaviors and the implementation of a BIP during the previous school year, the district reported that the student began the 2015-16 school year with no significant behaviors. Based on such success and because the student had responded to the classroom behavior management system, the team did not utilize the previous year's smiley chart until she displayed significant behaviors or ceased responding to the classroom behavior system. Tracking of the student's behavior with the smiley chart resumed on September 9, 2015. Further, the district asserts that it addressed the parent's concerns about the use of the smiley chart during the first two weeks of school by instituting individual behavior support on a day-to-day basis from either a social worker or a behavioral interventionist.

According to the IEP in effect at the beginning of the 2015-16 school year, dated May 28, 2015, the student's behavior impeded her learning or that of others. The BIP attached to that IEP included the use of a behavior chart with opportunities for earning

rewards to reinforce appropriate behaviors and minimize problem behaviors as a *Consequence Strategy*. The BIP also indicated that the classroom team would develop a behavior chart outlining the times of day to check in by September 11, 2015. The evaluation plan included a behavioral goal for the student to participate in classroom activities to gain positive adult attention and wait until designated check in times to talk to an adult as evidenced by gaining a certain percentage of daily points. Additionally, the team stated in the *Additional Notes* that, since the student was transitioning to Kindergarten, that team would determine the check in system that would be appropriate in the full day setting.

The parent provided a September 9, 2015 email from the student's teacher, which states, in part:

*"...This behavior has been out of the ordinary for what she has showed me over the past few weeks. I would like to continue to stick with the individual classroom behavior chart for now and if we continue to see this type of behavior over the next week, we can come together and create a plan with our team at [school] to adjust our support to meet [the student"s] needs..."*

This email suggests that the district was utilizing a behavior chart with the student, but neither party submitted documentation of the "individual classroom behavior chart" referenced by the teacher.

At the student's annual review meeting on September 29, 2015, some minor revisions were made to the BIP. For example, the team developed a separate BIP for each target behavior instead of one comprehensive BIP and the dates for the completion and review of intervention tasks were modified. The use of a behavior chart as a *Consequence Strategy* was removed from the BIP, but the provision of frequent behavioral feedback following activities was added as an *Antecedent Strategy*. Although the use of a behavior chart was not explicitly stated as a strategy in this BIP, it is implied based upon the intervention task to develop a behavior chart outlining the times of day to check in and the behavioral goal for the student to meet a specific percentage of daily points. Further, the *Additional Notes/Information* states that the team agreed to make the clip chart system correlate with the point sheet (smiley faces).

While additional meetings were convened subsequent to September 29, 2015, the parent's allegation was specific to the timeframe between the beginning of the 201516 school year and mid-September 2015. As such, based upon a review of the documentation, each of the student's BIPs in effect through September 2015 referenced the use of a behavior chart, but did not specifically identify the type of chart to be utilized (smiley chart) or the frequency (15 minute increments) in which staff were required to check in with the student. However, the district acknowledged that a behavior chart was not utilized during the first two weeks of the 2015-16 school year. Further, the district failed to provide documentation of the use of a behavior chart until October 2015. As such, a violation is found.

### iii. Provision of Information to Parent

No violation is found as explained below:

The parent alleged that the district intentionally withheld documentation, which violated the BIP. Specifically, the parent reported that documentation had been provided on a daily/weekly basis, but ceased between November 10, 2015 and December 4, 2015.



## B. Provision of Individual Aide

No violation is found as explained below:

The parent alleged that the district failed to provide the student with an individual aide in December 2015.



## Issue 6 - Personnel Required to be Qualified {23 IAC 226.800}

No violation is found as explained below:



25



### *Corrective Action*

The district must:

1. Ensure that placement decisions are made based on a child's IEP in accordance with 34 CFR 300.116 and such determinations are sufficiently documented.
2. Convene an IEP team meeting in order to clarify the use of isolated time out and physical restraint in the student's BIP.
3. Provide training to staff on isolated time out and physical restraint. Such training should address the use of such techniques, documentation requirements, parent notification requirements, and training requirements.
4. Disseminate information to staff regarding the requirements of 23 IAC 226.200 regarding the provision of special education and related services to eligible children in accordance with their IEPs as well as the requirements of 34 CFR 300.324(a)(4) and (a)(6) regarding parental agreement and IEP amendments.

The following materials will serve as verification of compliance with all parts of the corrective action order:

1. A statement of assurance that placement decisions will be made based on a child's IEP in accordance with 34 CFR 300.116 and such determinations will be sufficiently documented in the IEP.
2. A copy of the formal IEP, including the BIP in which the procedures for the use of isolated time out and physical restraint are clarified.
3. Documentation of the identified training, including a listing of staff and administration who participated and a copy of any training materials.
4. Verification of the dissemination of the identified information, including a listing of staff and administration who received such information, an explanation of the method of dissemination, and a copy of any materials provided.

The above listed materials should be sent to my attention, Special Education Services Division, no later than October 6, 2017.

26

Cooperation from both parties during this investigation is appreciated. Use of this complaint process does not preclude an eligible party such as a parent, school district, or a student from requesting a special education due process hearing. If you have any questions regarding this response, I can be reached at ████████████ or ████████████.

Sincerely,

████████████
Principal Education Consultant
Special Education Services Division

cc: ████████████ Parent
████████████ Attorney for Valley View CUSD 365U

27

8/26/2015: ████ is not exhibiting these negative behaviors at this time. The team is suspending the BIP at this time and will review her progress in six weeks (or sooner, if needed) to determine the appropriateness of the BIP for ████.

████████, Ed S.
School Psychologist
Pioneer Elementary School

C

 **Illinois State Board of Education**

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

James T. Meeks
Chairman

Tony Smith, Ph.D.
State Superintendent of Education

November 21, 2017

████████████

Director of Special Education
Valley View Community Unit School District 365U
801 West Normantown Road
Romeoville, IL 60446

and

████████████

Superintendent
Valley View Community Unit School District 365U
801 West Normantown Road
Romeoville, IL 60446

Re: ████████████ Complaint
Case Number 2017-0049

Dear ████████████████████:

The Special Education Division is in receipt of an October 26, 2017 letter from ████ ████████████ regarding the district's continued objection with the agency's July 31, 2017 letter of finding and October 16, 2017 response letter. As stated in the response letter, agency staff reviewed the concerns of the district outlined in their August 22, 2017 letter and made revisions to the letter of findings, dated October 12, 2016. Despite the district's position, a determination was made that the investigation was sufficient and the findings of fact and conclusions were aligned with the complaint process. As such, the revised letter of finding is final.

**Response to Corrective Action**

With regard to the identified complaint investigation, the Illinois State Board of Education, Special Education Services Division, received your response to the corrective action required in the October 12, 2016 revised letter of findings.

The following documentation was required and submitted, resulting in the closing of specific issues of the complaint:

*C*

1. *The district was required to ensure that placement decisions are made based on a child's Individualized Education Program (IEP) in accordance with 34 CFR 300.116 and such determinations are sufficiently documented.*

   The district submitted an October 26, 2017 statement of assurance ensuring that placement decisions will be made based on a student's IEP in accordance with 34 CFR 300.116 and that such placement decisions will be sufficiently documented in the IEP.

2. *The district was required to convene an IEP team meeting in order to clarify the use of isolated time out and physical restraint in the student's Behavior Intervention Plan (BIP).*

   The district reported that the parent revoked consent for special education services on September 19, 2017. As such, the student is now a general education student and no longer has an IEP or BIP to revise.

3. *The district was required to disseminate information to staff regarding the requirements of 23 IAC 226.200 regarding the provision of special education and related services to eligible children in accordance with their IEPs, as well as the requirements of 34 CFR 300.324(a)(4) and (a)(6) regarding parental agreement and IEP amendments.*

   The district provided an October 26, 2017 memorandum regarding the requirements of 23 IAC 226.200 and 34 CFR 324 that was disseminated to Student Resource Team (SRT) Leaders with a directive to review the regulations with special education staff and administrators.

However, portions of the required documentation were not submitted as explained below:

☐ *The district was required to submit documentation to verify the provision of training to staff on isolated time out and physical restraint. Such training was to address the use of such techniques, documentation requirements, parent notification requirements, and training requirements.*

   The district reported that it has already complied with this item of the corrective action since staff members and administrators receive regular nonviolent crisis intervention training, which includes training on techniques and requirements related to documentation and parental notification. Further, the district reported that a list of staff members and administrators who have received such training was provided in response to the complaint investigation.

   The intent of the required corrective action, specific to staff training, is to ensure that staff are aware of the regulatory requirements associated with the use of isolated time out and physical restraint, including documentation requirements,

parent notification requirements, and staff training requirements. Specifically, the district must provide training to staff on isolated time out and physical restraint that addresses the following:

- The district's procedures for utilizing isolated time out and physical restraint.
- The requirement to maintain a written record of each episode of isolated time out or physical restraint in the student's temporary record and the content of such records in accordance with 23 IAC 1.285(f).
- The requirement to issue written notice to a student's parent(s) within 24 hours after any use of isolated time out or physical restraint and the content of such notice in accordance with 23 IAC 1.285(g).
- The requirements for training in accordance with 23 IAC 1.285(h).

In order to verify full compliance with the corrective action, the district must submit documentation of the identified training, including a listing of staff and administration who participated and a copy of any training materials by *February 16, 2018*.

The district is reminded that failure to provide all parts of the corrective action order by the required date may result in a warning letter and possible consideration of enforcement procedures. Such enforcement procedures may include suspension of your school recognition or an order withholding some or all of your Part B funds under P.L. 108-446.

If you have any questions regarding this response, please contact me at ███████████

Sincerely,

████████

Principal Education Consultant
Special Education Services Division

cc:      Parent
         District Attorney
    , District Attorney

3

# Illinois State Board of Education
# Impartial Due Process Hearing

Susan Kuttner, Parent   )
      ████, Student   )
            )  **Case Number:**  **2016-0213**
  Versus       )
            )  **IHO** ████
    ValleyView     )
    School District #365U, )
    Local School District  )
    Pioneer Elementary School )

## PARENT'S MOTION TO STRIKE ALL TESTIMONY OF ██ CIPRIANO.

Now comes Susan Kuttner, Pro-Se, Parent of ████ and hereby moves that the IHO order TO <u>STRIKE TESTIMONY OF</u> ██ CIPRIANO in the Due Process Hearing beginning August 7, 2017, <u>testimony on August 9, 2017 and transcript from expedited hearing.</u>

   Parent respectfully requests the IHO strike all of ██ Cipriano's testimony and previous testimony from the record and does not consider it in her Decision Ruling.

   On August 9, 2017, ██ Cipriano arrived to testify but parties were waiting for lunch. ██ Cipriano met for 20 minutes with District/Counsel in the 418 room lunch room for the Hearing. During District's Cross Counsel elicited testimony in detail from Cipriano regarding Isolated Timeout and clarifications of what the witness had stated in previous meetings. Upon Redirect Parent questioned Cipriano and obtained responses affirming that she had met and discussed testimony related to Isolated Timeout with District/Counsel. The witness preceding Cipriano was ████ during whose testimony new evidence was entered regarding 2 admissions by Cipriano on a recording that Isolated Timeout had been used on the Student, which would have been a violation.

   This was extremely prejudicial to Parent's case and Parent asserts her testimony after having been influenced was unlikely true. Counsel tampered with witness Cipriano, influencing her testimony. IHO announced to Witness ████ not to discuss her testimony, but District/Counsel conveyed the exact content of the damaging evidence and influenced Cipriano's testimony in District's favor. This is further unethical.

# Argument and Law

The IHO may decide to strike the testimony and any transcripts of ██ Cipriano and not give any consideration or weight whatsoever to her testimonies, but IHO may preserve the record of the testimony which helped determine the valid cause to Strike the testimony.

D

Law and citations related to Witness tampering, influencing witness(es)/their testimony:
>   Federal Rules of Evidence such as Rule 615 Witnesses, Article VI,
>   Impeachment of Witness/witness testimony, barring testimony
>   18 US Code 1512 (primarily (b))
>   People v. Mancilla 250 Ill.App.3d 353, 620 N.E.2d 1163 (1st Dist. 1993) –
>   violation of due process by exerting improper influence…….
>   ABA Model Rules of Professional Conduct R 1.1, 3.3(a)(3), 3.4(b), 3.4
>   *Geders v. United States*, 425 U.S. 80, 90 n.3 (1976); *Hall v. Clifton Precision*, 150
>   F.R.D. 525, 528 (E.D. Pa. 1993)
>   *e.g.*, *Abner v. Elliot*, 706 N.E.2d 765, 767 (Ohio 1999); S. Rep. No. 108-118 (July
>   21, 1993), *Fairness in Asbestos Injury Resolution Act*, at 85–95 (Script Memo
>   reprinted at 109–31)

Quote 1 & 2 from:
http://apps.americanbar.org/litigation/committees/trialpractice/articles/121311-ethics-preparation-witnesses-deposition-trial.html

## Quote 1:

### "Witness Preparation Generally

A lawyer has a duty to prepare a witness to testify. This preparation may include discussion concerning the application of law to the events in issue.But "[a]n attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it." *Geders v. United States*, 425 U.S. 80, 90 n.3 (1976); *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993). Thus, the prohibition of counseling or assisting a witness to testify falsely also applies to the influence that an attorney may have on the substance of a witness's testimony in the preparation process."An attorney enjoys extensive leeway in preparing a witness to testify truthfully, but the attorney crosses a line when she influences the witness to alter testimony in a false or misleading way." *Ibarra v. Baker*, 338 F. App'x 457, 465 (5th Cir. 2009) (citing John S. Applegate, *Witness Preparation*, 68 Tex. L. Rev. 277 (1989))………."

## & Quote 2:

"Preparing a witness to give a rehearsed answer is improper if the purpose for doing so is to mislead the finder of fact or frustrate the inquiring party from obtaining legitimate discovery. A prime example is the document known as the "Script Memo," which was inadvertently disclosed by a novice lawyer to defense counsel, and has been the topic of extensive discussion and debate on the issue of witness coaching. *See, e.g., Abner v. Elliot*, 706 N.E.2d 765, 767 (Ohio 1999); S. Rep. No. 108-118 (July 21, 1993), *Fairness in Asbestos Injury Resolution Act*, at 85–95 (Script Memo reprinted at 109–31); *see also* "Witness Preparation Memos Raise Questions about Ethical Limits," 14 Laws. Man. On Prof'l Conduct (ABA/BNA) 48 (1998) (discussing numerous examples, including *In re Eldridge*, 82 N.Y 161 (1880) (A lawyer's duty is to "extract the facts from the witness, not to pour them into him; to learn what the witness does know, not to teach him what he ought to know."); *EEOC v. Mitsubishi Motor Mfg. of Am. Inc.*, No. 96-1192 (C.D. Ill.

Oct. 23, 1997) ("[T]he 'memory joggers' that Mitsubishi finds so objectionable are probably, in most cases, no more suggestive than Mitsubishi's own communications with its people before a deposition."); Joseph D. Piorkowski Jr., Note, *Professional Conduct and the Preparation of Witnesses for Trial: Defining the Acceptable Limitations of Coaching*, 1 Geo. J. Legal Ethics 397, 401 (1987) (surveying the law concerning the practice of suggesting particular words, indicating that lawyers are prohibited only from attempting to influence the intended meaning of a witness's testimony on a material issue))."

According to laws and regulations when a witness is tampered with or influenced by a party (District/Counsel) the opposing party (Parent) can move to strike that witness's testimony as it damages or prejudices the case. Parent requests that all of ▇ Cipriano's testimony on August 9, 2017 (and ▇ Cipriano's portion of the transcript from march 2017 Expedited Hearing as well) be stricken from the record and not considered by the IHO in rendering her decision. If the IHO preserves the portion of the testimony that is evidence of the offense and effected testimony that was proof of the influenced testimony than it should remain on the record in part only (related to the Redirect by Parent where Parent asked witness if she met with opposing party at lunch upon her arrival that day & the portions of testimony that reference Isolated Timeout clarifications or other such references in Distict's "Cross") and IHO should not consider the testimony of ▇ Cipriano in any way in weighing the evidence of the case and issuing her Decision.

## CONCLUSION

IHO should find that District/District Counsel has influenced Witness(es) and tampered with Witness(es), identified to date as Witness ▇ Cipriano, and IHO should now Strike ▇ Cipriano's entire testimony and transcript from both Hearings and take whatever action the IHO deems suitable.

**Filed August 11, 2017**                    **Respectfully Submitted,**

**/S/ Susan Kuttner**

**Susan Kuttner**
**Mother of** ▇
**866-751-6233**

**Royalrealestate10@yahoo.com**

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2017, I delivered to IHO ▇ and District's Counsel on the record at the Due Process Hearing, a copy of this MOTION TO STRIKE ALL TESTIMONY OF ▇ CIPRIANO.          **/S/ Susan Kuttner**

**Susan Kuttner**



# Illinois
# Compilation of School
# Discipline Laws and
# Regulations

Prepared: January 31, 2017

I (E)

(h) School officials shall not advise or encourage students to drop out voluntarily due to behavioral or academic difficulties.

(i) A student may not be issued a monetary fine or fee as a disciplinary consequence, though this shall not preclude requiring a student to provide restitution for lost, stolen, or damaged property.

(j) Subsections (a) through (i) of this Section shall apply to elementary and secondary schools, charter schools, special charter districts, and school districts organized under Article 34 of this Code.

### REGULATIONS

No relevant regulations found.

## In school suspension

### LAWS

### § 105 ILCS 5/13B-20.5. Eligible activities and services.

Eligible activities and services. Alternative learning opportunities programs may include without limitation evening high school, in-school tutoring and mentoring programs, in-school suspension programs, high school completion programs to assist high school dropouts in completing their education, support services, parental involvement programs, and programs to develop, enhance, or extend the transition for students transferring back to the regular school program, an adult education program, or a post-secondary education program.

### REGULATIONS

No relevant regulations found.

## Return to school following removal

### LAWS

### § 105 ILCS 5/10-22.6. Suspension or expulsion of pupils; school searches.

(g) A school district may adopt a policy providing that if a student is suspended or expelled for any reason from any public or private school in this or any other state, the student must complete the entire term of the suspension or expulsion in an alternative school program under Article 13A of this Code or an alternative learning opportunities program under Article 13B of this Code before being admitted into the school district if there is no threat to the safety of students or staff in the alternative program.

### REGULATIONS

No relevant regulations found.

## Use of restraint and seclusion

### LAWS

### § 105 ILCS 5/2-3.130. Time out and physical restraint rules.

The State Board of Education shall promulgate rules governing the use of time out and physical restraint in the public schools. The rules shall include provisions governing recordkeeping that is required when physical restraint or more restrictive forms of time out are used.

### § 105 ILCS 5/10-20.33. Time out and physical restraint.

Until rules are adopted under Section 2-3.130 of this Code, the use of any of the following rooms or enclosures for time out purposes is prohibited:

(1) a locked room other than one with a locking mechanism that engages only when a key or handle is being held by a person;

(2) a confining space such as a closet or box;

(3) a room where the student cannot be continually observed; or

(4) any other room or enclosure or time out procedure that is contrary to current guidelines of the State Board of Education.

The use of physical restraints is prohibited except when (i) the student poses a physical risk to himself, herself, or others, (ii) there is no medical contraindication to its use, and (iii) the staff applying the restraint have been trained in its safe application. For the purposes of this Section, "restraint" does not include momentary periods of physical restriction by direct person-to-person contact, without the aid of material or mechanical devices, accomplished with limited force and that are designed (i) to prevent a student from completing an act that would result in potential physical harm to himself, herself, or another or damage to property or (ii) to remove a disruptive student who is unwilling to voluntarily leave the area. The use of physical restraints that meet the requirements of this Section may be included in a student's individualized education plan where deemed appropriate by the student's individualized education plan team. Whenever physical restraints are used, school personnel shall fully document the incident, including the events leading up to the incident, the type of restraint used, the length of time the student is restrained, and the staff involved. The parents or guardian of a student shall be informed whenever physical restraints are used.

### § 105 ILCS 5/34-18.20. Time out and physical restraint.

Until rules are adopted under Section 2-3.130 of this Code, the use of any of the following rooms or enclosures for time out purposes is prohibited:

(1) a locked room other than one with a locking mechanism that engages only when a key or handle is being held by a person;

(2) a confining space such as a closet or box;

(3) a room where the student cannot be continually observed; or

(4) any other room or enclosure or time out procedure that is contrary to current guidelines of the State Board of Education. The use of physical restraints is prohibited except when (i) the student poses a physical risk to himself, herself, or others, (ii) there is no medical contraindication to its use, and (iii) the staff applying the restraint have been trained in its safe application. For the purposes of this Section, "restraint" does not include momentary periods of physical restriction by direct person-to-person contact, without the aid of material or mechanical devices, accomplished with limited force and that are designed (i) to prevent a student from completing an act that would result in potential physical harm to himself, herself, or another or damage to property or (ii) to remove a disruptive student who is unwilling to voluntarily leave the area. The use of physical restraints that meet the requirements of this Section may be included in a student's individualized education plan where deemed appropriate by the student's individualized education plan team. Whenever physical restraints are used, school personnel shall fully document the incident, including the events leading up to the incident, the type of restraint used, the length of time the student is restrained, and the staff involved. The parents or guardian of a student shall be informed whenever physical restraints are used.

**REGULATIONS**

**1.280. Discipline.**

Section 24-24 of the School Code [105 ILCS 5/24-24] provides for teachers, other licensed educational employees (except for individuals holding an educator license with stipulations endorsed for paraprofessional educator) and persons providing a related service for or with respect to a student as determined by the board of education to maintain discipline in the schools.

c) Any use of isolated time out or physical restraint permitted by a board's policy shall conform to the requirements of Section 1.285 of this Part. If isolated time out or physical restraint is to be permitted, the policy shall include:

1) the circumstances under which isolated time out or physical restraint will be applied;

2) a written procedure to be followed by staff in cases of isolated time out or physical restraint;

3) designation of a school official who will be informed of incidents and maintain the documentation required pursuant to Section 1.285 of this Part when isolated time out or physical restraint is used;

4) the process the district or other administrative entity will use to evaluate any incident that results in an injury that the affected student (or the responsible parent or guardian), staff member, or other individual identifies as serious;

5) a description of the alternative strategies that will be implemented when determined advisable pursuant to Section 1.285(f)(4) of this Part; and

6) a description of the district's or other administrative entity's annual review of the use of isolated time out or physical restraint, which shall include at least:

A) the number of incidents involving the use of these interventions,

B) the location and duration of each incident,

C) identification of the staff members who were involved,

D) any injuries or property damage that occurred, and

E) the timeliness of parental notification and administrative review.

d) In addition to, or as part of, its policy on the maintenance of discipline, each board of education shall adopt policies and procedures regarding the use of behavioral interventions for students with disabilities who require intervention. Each board's policies and procedures shall conform to the requirements of Section 14-8.05(c) of the School Code [105 ILCS 5/14-8.05(c)].

**1.285. Requirements for the use of isolated time out and physical restraint.**

Isolated time out and physical restraint as defined in this Section shall be used only as means of maintaining discipline in schools (that is, as means of maintaining a safe and orderly environment for learning) and only to the extent that they are necessary to preserve the safety of students and others. Neither isolated time out nor physical restraint shall be used in administering discipline to individual students, i.e., as a form of punishment. Nothing in this Section or in Section 1.280 of this Part shall be construed as regulating the restriction of students' movement when that restriction is for a purpose other than the maintenance of an orderly environment (e.g., the appropriate use of safety belts in vehicles).

a) "Isolated time out" means the confinement of a student in a time-out room or some other enclosure, whether within or outside the classroom, from which the student's egress is restricted. The use of isolated time out shall be subject to the following requirements.

1) Any enclosure used for isolated time out shall:

A) have the same ceiling height as the surrounding room or rooms and be large enough to accommodate not only the student being isolated but also any other individual who is required to accompany that student;

B) be constructed of materials that cannot be used by students to harm themselves or others, be free of electrical outlets, exposed wiring, and other objects that could be used by students to harm themselves or others, and be designed so that students cannot climb up the walls (including walls far enough apart so as not to offer the student being isolated sufficient leverage for climbing); and

C) be designed to permit continuous visual monitoring of and communication with the student.

2) If an enclosure used for isolated time out is fitted with a door, either a steel door or a wooden door of solid-core construction shall be used. If the door includes a viewing panel, the panel shall be unbreakable.

3) An adult who is responsible for supervising the student shall remain within two feet of the enclosure.

4) The adult responsible for supervising the student must be able to see the student at all times. If a locking mechanism is used on the enclosure, the mechanism shall be constructed so that it will engage only when a key, handle, knob, or other similar device is being held in position by a person, unless the mechanism is an electrically or electronically controlled one that is automatically released when the building's fire alarm system is triggered. Upon release of the locking mechanism by the supervising adult, the door must be able to be opened readily.

b) "Physical restraint" means holding a student or otherwise restricting his or her movements. "Physical restraint" as permitted pursuant to this Section includes only the use of specific, planned techniques (e.g., the "basket hold" and "team control").

c) The requirements set forth in subsections (d) through (h) of this Section shall not apply to the actions described in this subsection (c) because, pursuant to Section 10-20.33 of the School Code [105 ILCS 5/10-20.33], "restraint" does not include momentary periods of physical restriction by direct person-to-person contact, without the aid of material or mechanical devices, accomplished with limited force and designed to:

1) prevent a student from completing an act that would result in potential physical harm to himself, herself, or another or damage to property; or

2) remove a disruptive student who is unwilling to leave the area voluntarily.

d) The use of physical restraint shall be subject to the following requirements.

1) Pursuant to Section 10-20.33 of the School Code, physical restraint may only be employed when:

A) the student poses a physical risk to himself, herself, or others,

B) there is no medical contraindication to its use, and

C) the staff applying the restraint have been trained in its safe application as specified in subsection (h)(2) of this Section.

2) Students shall not be subjected to physical restraint for using profanity or other verbal displays of disrespect for themselves or others. A verbal threat shall not be considered as constituting a physical danger unless a student also demonstrates a means of or intent to carry out the threat.

3) Except as permitted by the administrative rules of another State agency operating or licensing a facility in which elementary or secondary educational services are provided (e.g., the Illinois Department of Corrections or the Illinois Department of Human Services), mechanical or chemical restraint (i.e., the use of any device other than personal physical force to restrict the limbs, head, or body) shall not be employed.

4) Medically prescribed restraint procedures employed for the treatment of a physical disorder or for the immobilization of a person in connection with a medical or surgical procedure shall not be used as means of physical restraint for purposes of maintaining discipline.

5) Any application of physical restraint shall take into consideration the safety and security of the student. Further, physical restraint shall not rely upon pain as an intentional method of control.

6) In determining whether a student who is being physically restrained should be removed from the area where the restraint was initiated, the supervising adult shall consider the potential for injury to the student, the student's need for privacy, and the educational and emotional well-being of other students in the vicinity.

7) If physical restraint is imposed upon a student whose primary mode of communication is sign language or an augmentative mode, the student shall be permitted to have his or her hands free of restraint for brief periods, unless the supervising adult determines that this freedom appears likely to result in harm to the student or others.

e) Time Limits

1) A student shall not be kept in isolated time out for longer than is therapeutically necessary, which shall not be for more than 30 minutes after he or she ceases presenting the specific behavior for which isolated time out was imposed or any other behavior for which it would be an appropriate intervention.

2) A student shall be released from physical restraint immediately upon a determination by the staff member administering the restraint that the student is no longer in imminent danger of causing physical harm to himself, herself, or others.

f) Documentation and Evaluation

1) A written record of each episode of isolated time out or physical restraint shall be maintained in the student's temporary record. The official designated pursuant to Section 1.280(c)(3) of this Part shall also maintain a copy of each of these records. Each record shall include:

A) the student's name;

B) the date of the incident;

C) the beginning and ending times of the incident;

D) a description of any relevant events leading up to the incident;

E) a description of any interventions used prior to the implementation of isolated time out or physical restraint;

F) a description of the incident and/or student behavior that resulted in isolated time out or physical restraint;

G) a log of the student's behavior in isolated time out or during physical restraint, including a description of the restraint techniques used and any other interaction between the student and staff;

H) a description of any injuries (whether to students, staff, or others) or property damage;

I) a description of any planned approach to dealing with the student's behavior in the future;

J) a list of the school personnel who participated in the implementation, monitoring, and supervision of isolated time out or physical restraint;

K) the date on which parental notification took place as required by subsection (g) of this Section.

2) The school official designated pursuant to Section 1.280(c)(3) of this Part shall be notified of the incident as soon as possible, but no later than the end of the school day on which it occurred.

3) The record described in subsection (f)(1) of this Section shall be completed by the beginning of the school day following the episode of isolated time out or physical restraint.

4) The requirements of this subsection (f)(4) shall apply whenever an episode of isolated time out exceeds 30 minutes, an episode of physical restraint exceeds 15 minutes, or repeated episodes have occurred during any three-hour period.

A) A licensed educator knowledgeable about the use of isolated time out or trained in the use of physical restraint, as applicable, shall evaluate the situation.

B) The evaluation shall consider the appropriateness of continuing the procedure in use, including the student's potential need for medication, nourishment, or use of a restroom, and the need for alternate strategies (e.g., assessment by a mental health crisis team, assistance from police, or transportation by ambulance).

C) The results of the evaluation shall be committed to writing and copies of this documentation shall be placed into the student's temporary student record and provided to the official designated pursuant to Section 1.280(c)(3) of this Part.

5) When a student has first experienced three instances of isolated time out or physical restraint, the school personnel who initiated, monitored, and supervised the incidents shall initiate a review of the effectiveness of the procedures used and prepare an individual behavior plan for the student that provides either for continued use of these interventions or for the use of other, specified interventions. The plan shall be placed into the student's temporary student record. The review shall also consider the student's potential need for an alternative program or for special education.

A) The district or other entity serving the student shall invite the student's parents or guardians to participate in this review and shall provide ten days' notice of its date, time, and location.

B) The notification shall inform the parents or guardians that the student's potential need for special education or an alternative program will be considered and that the results of the review will be entered into the temporary student record.

g) Notification to Parents

1) A district whose policies on the maintenance of discipline include the use of isolated time out or physical restraint shall notify parents to this effect as part of the information distributed annually or upon enrollment pursuant to Sections 10-20.14 and 14-8.05(c) of the School Code [105 ILCS 5/10-20.14 and 14-8.05(c)].

2) Within 24 hours after any use of isolated time out or physical restraint, the school district or other entity serving the student shall send written notice of the incident to the student's parents, unless the parent has provided the district or other entity with a written waiver of this requirement for notification. The notification shall include the student's name, the date of the incident, a description of the intervention used, and the name of a contact person with a telephone number to be called for further information.

h) Requirements for Training

1) Isolated Time Out. Each district, cooperative, or joint agreement whose policy permits the use of isolated time out shall provide orientation to its staff members covering at least the written procedure established pursuant to Section 1.280(c)(2) of this Part.

2) Physical Restraint

A) Physical restraint as defined in this Section shall be applied only by individuals who have received systematic training that includes all the elements described in subsection (h)(2)(B) of this Section and who have received a certificate of completion or other written evidence of participation. An individual who applies physical restraint shall use only techniques in which he or she has received training within the preceding two years, as indicated by written evidence of participation.

B) Training with respect to physical restraint may be provided either by the employer or by an external entity and shall include, but need not be limited to:

 I) appropriate procedures for preventing the need for physical restraint, including the de-escalation of problematic behavior, relationship-building, and the use of alternatives to restraint;

 ii) a description and identification of dangerous behaviors on the part of students that may indicate the need for physical restraint and methods for evaluating the risk of harm in individual situations in order to determine whether the use of restraint is warranted;

 iii) the simulated experience of administering and receiving a variety of physical restraint techniques, ranging from minimal physical involvement to very controlling interventions;

 iv) instruction regarding the effects of physical restraint on the person restrained, including instruction on monitoring physical signs of distress and obtaining medical assistance;

 v) instruction regarding documentation and reporting requirements and investigation of injuries and complaints; and

 vi) demonstration by participants of proficiency in administering physical restraint.



C) An individual may provide training to others in a particular method of physical restraint only if he or she has received written evidence of completing training in that technique that meets the requirements of subsection (h)(2)(B) of this Section within the preceding one-year period.



## Alternative placements

### LAWS

### § 105 ILCS 5/2-3.66. Truants' alternative and optional education programs.

To establish projects to offer modified instructional programs or other services designed to prevent students from dropping out of school, including programs pursuant to Section 2-3.41, and to serve as a part time or full time option in lieu of regular school attendance and to award grants to local school districts, educational service regions or community college districts from appropriated funds to assist districts in establishing such projects. The education agency may operate its own program or enter into a contract with another not-for-profit entity to implement the program. The projects shall allow dropouts, up to and including age 21, potential dropouts, including truants, uninvolved, unmotivated and disaffected students, as defined by State Board of Education rules and regulations, to enroll, as an alternative to regular school attendance, in an optional education program which may be established by school board policy and is in conformance with rules adopted by the State Board of Education. Truants' Alternative and Optional Education programs funded pursuant to this Section shall be planned by a student, the student's parents or legal guardians, unless the student is 18 years or older, and school officials and shall culminate in an individualized optional education plan. Such plan shall focus on academic or vocational skills, or both, and may include, but not be limited to, evening school, summer school, community college courses, adult education, preparation courses for high school equivalency testing, vocational training, work experience, programs to enhance self concept and parenting courses. School districts which are awarded grants pursuant to this Section shall be authorized to provide day care services to children of students who are eligible and desire to enroll in programs established and funded under this Section, but only if and to the extent that such day care is necessary to enable those eligible students to attend and participate in the programs and courses which are conducted pursuant to this Section. School districts and regional offices of education may claim general State aid under Section 18-8.05 for students enrolled in truants' alternative and optional education programs, provided that such students are receiving services that are supplemental to a program leading to a high school diploma and are otherwise eligible to be claimed for general State aid under Section 18-8.05.

Subject: Re: ██/2016-0213: parent's subpoenas and questions

From: royalrealestate10@yahoo.com
To: ██████
Cc: ██████
Date: Tuesday, July 25, 2017, 1:22:32 PM CDT

We did go through most of the witnesses for hearing that I put on subpoenas. They are not current current employees. ██████ were approved witnesses and I thought ██████ was approved. #s 3-6 below are the ██████ that were all approved at Prehearing. So all 7 listed below and other non employees should be issued. I didn't ask for any unapproved subpoenas. As for ██████ she needs a subpoena for her job(s) please.

Susan

Sent from my iPhone

On Jul 25, 2017, at 11:04 AM, ██████ wrote:

Dear Hearing Officer ██████:

The District is in agreement with your position that good cause has not been demonstrated for subpoenas for each of the witnesses in Ms. Kuttner's proposed subpoena list. Specifically, the District objects to subpoenas being issued for the following individuals:

All other individuals listed on Ms. Kuttner's subpoenas are former District employees and must be

subpoenaed to testify in the hearing.

Thanks,

Attorney

<image001.jpg>

This message is confidential. This message may also be privileged or protected by work product immunity or other laws and regulations. If you have received it by mistake, please re-send this communication to the sender and delete it from your system without copying it or disclosing its contents to anyone.

**From:** [mailto:ihd
**Sent:** Tuesday, July 25, 2017 8:24 AM

**To:** Susan Kuttner <Royalrealestate10@yahoo.com>
**Cc:**

**Subject:** 2016-0213: parent's subpoenas and questions

Ms. Kuttner:

It is not my recollection that we discussed each of these proposed witnesses needing a subpoena. There must a good cause showing for a subpoena request, made in writing, so I need to know why each person requires a subpoena. You do NOT need to subpoena district employees as the district must produce those people, and several people on your list are district employees. ▊▊▊▊ appeared before - why does she need a subpoena this time? We did discuss ▊▊▊▊ at the phc, but the other people are not on your list that we reviewed at the phc, so I do not know who there are or why they are being called to testify. I will not issue subpoenas for people we have not reviewed and discussed. ▊▊▊▊▊▊ does the district have objections to any of these requests?

I think that addresses one of your questions, Ms. Kuttner.

Impartial Hearing Officer

*Consistent with the Electronic Communications Privacy Act (18 USC 2510 et seq.), this email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*





Subject:  FW: ▓▓▓▓ - PHC Report Review

From: ▓▓▓▓▓▓▓▓▓▓

To:  iho▓▓▓▓▓▓▓

Cc:  royalrealestate10@yahoo.com; ▓▓▓▓▓▓▓▓▓▓

Date:  Tuesday, July 25, 2017, 3:55:46 PM CDT

Dear Hearing Officer ▓▓▓,

As a follow up to my email below, the District would like the attached list of your rulings on the District's objections to those individuals listed on Ms. Kuttner's witness list to be added to the pre-hearing conference report in order to ensure clarity. Should you have any questions, please let me know.

Thanks,

▓▓▓▓

▓▓▓▓▓▓▓

Attorney



## Pre-Hearing Conference Summary of Parent's Proposed Witness List and Hearing Officer's Rulings on District's Objections

| | | Name of Witness | Hearing Officer Ruling: Allowed or Sustained |
|---|---|---|---|
| | 1. | | Allowed |
| | 2. | | Allowed |
| | 3. | | Allowed |
| | 4. | | Sustained |
| | 5. | | Sustained |
| | 6. | | Allowed |
| | 7. | | Sustained |
| | 8. | | Sustained |
| | 9. | | Sustained |
| | 10. | | Sustained |
| | 11. | | Sustained |
| | 12. | | Sustained |
| | 13. | B■■ S■ | Allowed |
| | 14. | | *Sustained* |
| | 15. | N■■ F■ | Allowed |
| | 16. | E■ M■ | Allowed |
| | 17. | | Allowed |
| | 18. | | Allowed |
| | 19. | | Allowed |
| | 20. | | Allowed |
| | 21. | | No objection |
| | 22. | | Allowed |
| | 23. | | Allowed |
| | 24. | | Allowed |
| | 25. | | Allowed but must testify in person |
| | 26. | | Allowed |
| | 27. | C■ J■ | Allowed |
| | 28. | S■ D■ | Allowed |
| | 29. | | Allowed |
| | 30. | | Allowed |
| | 31. | | Allowed |
| | 32. | | Allowed |
| | 33. | | Allowed |
| | 34. | | Allowed |
| | 35. | | Allowed |
| | 36. | C■ E■ | Allowed |
| | 37. | | Allowed |
| | 38. | | Allowed |



| 39. | | No objection |
|---|---|---|
| 40. | | Sustained |
| 41. | | *No objection* |
| 42. | | District may object at hearing |
| 43. | | District may object at hearing |
| 44. | | District may object at hearing |
| 45. | | District may object at hearing |
| 46. | | District may object at hearing |
| 47. | J▓ W▓ | District may object at hearing |
| 48. | | District may object at hearing |
| 49. | | District may object at hearing |
| 50. | | District may object at hearing |
| 51. | | District may object at hearing |
| 52. | | District may object at hearing |
| 53. | | District may object at hearing |
| 54. | | District may object at hearing |
| 55. | | District may object at hearing |
| 56. | | District may object at hearing |
| 57. | | Allowed |
| 58. | | Sustained |
| 59. | | Sustained |
| 60. | | Sustained |
| 61. | | Sustained |
| 62. | | Allowed |
| 63. | | Sustained |
| 64. | Regional Office of Education's ▓ and/or Supervisor . | Allowed |

Witnesses :

★ - Did not Appear under subpoena
(Former Employees)

✓ - Did not appear / Not Produced
(Current District Employees)